ELMA SCOTT, WIDOW OF RAY E. SCOTT, DECEASED, APPELLEE, v. YOUNG MEN'S CHRISTIAN ASSOCIATION OF GRAND ISLAND ET AL., APPELLANTS.
240 N. W. 2d 587

Filed April 7, 1976. No. 40351.

Nelson, Harding, Marchetti, Leonard & Tate and Alan L. Plessman, for appellants.

Richard L. Huber of Higgins, Higgins & Huber, for appellee.

Heard before SPENCER, NEWTON, and CLINTON, JJ., and WARREN and RIST, District Judges.

WARREN, District Judge.

This is an action by the widow of Ray E. Scott to recover benefits under the Workmen's Compensation Law resulting from her husband's death while employed by the defendant Young Men's Christian Association of Grand Island. The one judge Workmen's Compensation Court found and determined that the plaintiff's decedent died by drowning as a result of an accident arising out of and in the course of his employment by the defendant when he fell into the indoor swimming pool located on the premises of his employment, and made an award accordingly. On rehearing before the Workmen's Compensation Court en banc, similar findings and award were made. Defendants appealed to the District Court, which affirmed the en banc judgment of the Workmen's Compensation Court. Defendants have now appealed to this court.

The facts are not in dispute. The body of the decedent Ray E. Scott was found at about 9 p.m., on April 20, 1974, lying at the bottom of the filled swimming pool located in the YMCA building. His body was fully clothed, his eyeglasses were still in place, and no cuts, bruises, or other external signs of trauma were evidenced when the body was pulled from the pool. A

small sledge hammer and a towel were found on the pool floor in the southeast corner near the body. The decedent's pipe and cap, together with a discarded notebook, two T-shirts, and some campaign cards were found floating at various places in the pool. The interior lights were off, and there was no evidence of an illegal entry.

The decedent, age 75, had worked as custodian for the YMCA for 8 or 9 years, never missing a day from work. His mental health and physical condition were excellent except for borderline diabetis for which he took oral medication. He had never suffered from blackouts, fainting spells, or heart problems, and had uneventfully taken his normal monthly medical examination 3 days before his death. He had worked normally from 4 a.m. to 9 a.m. the morning of his death, using his own sledge hammer to demolish some wooden bicycle racks at the front of the building. He appeared normal at his home and after breakfast went out and worked in the garden, and returned to work at about 6 p.m., as was his normal practice, to clean up after the end of the day's swimming for church services to be held the next morning. He parked near the rear or south end of the building. No one observed his activities from that time on. He was a nonswimmer. It was his practice to use the back or south exit to empty trash and to enter and leave the building, but when so exiting, the location of the only light switch at the north end of the pool building caused one to first shut off the lights and then walk along the darkened six-foot walkway beside the pool in order to get to the rear exit door, which was slightly offset from the walkway, toward the center of the pool.

Dr. Pierce T. Sloss, a qualified pathologist who performed an autopsy, testified that the cause of death was drowning, based upon his finding of fresh hemorrhages into the mastoid air sacs of both temporal bones, which in the absence of mechanical injury are found

only in death from drowning. He further found that shortly before Mr. Scott's death, he suffered acute backward heart failure. He testified that the three possible causes of backward heart failure are drowning, high blood pressure, and hardening of the arteries that supply the musculature of the heart. He found a prominent degree of hardening of the arteries in the decedent, and that decedent suffered from high blood pressure. Dr. Sloss could not say whether the backward heart failure preceded or followed the decedent's entry into the water. He did give the opinion that Mr. Scott was alive when he went into the water, but could not say whether or not he was then conscious.

The defendants contend that the evidence gives rise to the inference that plaintiff's decedent became distressed or unconscious by reason of a natural disease which caused acute backward heart failure, and he thereby fell into the swimming pool. Plaintiff theorizes that Mr. Scott simply slipped, stumbled, or fell into the pool and then drowned.

Section 48-184, R. R. S. 1943, sets forth the standard for review. "The Supreme Court, on an appeal from the District Court in a workmen's compensation case may set aside the judgment of the District Court only upon the grounds provided by statute, which include '(3) the findings of fact are not supported by the evidence as disclosed by the record.' * * * If this court so finds, it then considers the matter de novo." McPhillips v. Knox Constr. Co., Inc., 190 Neb. 306, 208 N. W. 2d 261 (1973).

It is fundamental that in order to recover benefits under the act, a plaintiff must establish by a preponderance of the evidence that the death occurred within the time and place limits of the employment and that the injury or death was incidental to or caused by the employment. Oline v. Nebraska Nat. Gas Co., 177 Neb. 851, 131 N. W. 2d 410 (1964).

"For an injury to be compensable the accident must

have had its origin in or have been incidental to the employment, or it must have resulted from a risk which by reason of the employment exposed the employee to a greater hazard than if he had not been so employed." Henry v. Village of Coleridge, 147 Neb. 686, 24 N. W. 2d 922 (1946).

"Whether an accident arises out of and in the course of the employment must be determined by the facts of each case. There is no fixed formula by which the question may be resolved." Cochran v. Bellevue Bridge Commission, 174 Neb. 761, 119 N. W. 2d 292 (1963).

"The 'by accident' requirement of the Workmen's Compensation Act is now satisfied, either if the cause was of an accidental character, or if the effect was unexpected or unforeseen, and happened suddenly and violently. The problem in cases such as this is now causation, and whether an accidental injury arose out of and in the course of employment." Brokaw v. Robinson, 183 Neb. 760, 164 N. W. 2d 461 (1969). Scott's drowning death clearly falls within the "by accident" requirement above stated.

"* * * the words 'arising out of' and 'in the course of' the employment are used conjunctively in the statute and both conditions must be established to satisfy the requirement of the Workmen's Compensation Act. The accident must occur not only in the course of the employment but the causative danger must also arise out of it. * * * the words 'arising out of' referred to the origin or cause of the accident and are descriptive of its character, while the words 'in the course of' refer to the time, place, and circumstances of the accident." Reis v. Douglas County Hospital, 193 Neb. 542, 227 N. W. 2d 879 (1975).

The "in the course of" employment requirement presents no problem. It is unquestioned that Scott's death occurred within the time and space limits of his employment. The problem here is causation.

"Where the testimony gives rise to conflicting infer-

ences of equal degree of probability so that the choice between them is a mere matter of conjecture, a workmen's compensation award cannot be obtained." Pocevicius v. Armour & Co., 185 Neb. 668, 178 N. W. 2d 265 (1970).

The cause of Scott's fall into the swimming pool remains a close question. It may have been idiopathic or purely accidental. Death has removed the only possible witness who could prove causal connection by direct testimony. No one saw Scott fall into the pool, but this fact is not fatal to a finding of how it occurred. Considerable circumstantial evidence was available to the Workmen's Compensation Court and to the District Court in determining whether the plaintiff met her burden of proof to establish causation.

" 'It arises "out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. * * * The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " Socha v. Cudahy Packing Co., 105 Neb. 691, 181 N. W. 706, 13 A. L. R. 513 (1921).

Scott was a nonswimmer, and as such, a body of water was a special risk to him. His employment required him to work around an indoor swimming pool where slippery walkways were a fact of life. The lighting

arrangement precluded use of his normal exit door except after the lights had been extinquished. The location of the exit door practically invited one heading blindly toward it to "cut the corner."

At the time of the accident, Scott had evidently completed his evening cleanup, turned out the lights and was heading for the rear exit, carrying several items discarded by swimmers earlier in the day toward trash barrels located at the rear of the building.

The evidence indicates that Scott had completed his task involving the use of the sledge hammer which he had brought from his home and it can be fairly inferred that he was also then carrying it with him to take back home. The location of the sledge hammer in the southeast corner of the pool almost certainly marks his point of entry. A wet and slippery floor along the walkway would have been the most natural condition after swimmers had used the pool from 9 a.m. until 5 p.m. that day.

It can be inferred with reasonable certainty that Scott fell into the pool as a result of slipping or stumbling, or that in the darkness he misjudged the 75-foot length of the pool, "cut the corner" too soon, and simply walked into the pool. In either event, it is highly significant that *all* the articles he was carrying (sledge hammer, towel, notebook, two T-shirts, and campaign cards) ended up in the pool water. Not a single one of the items was dropped on the pool walkway. It is neither logical nor probable to believe that if he had felt faint or ill, or even became suddenly unconscious, he would have held onto all these items and carried them with him into the pool. If suddenly stricken, the very first reaction would have been to drop the articles and at least some of them would have been found on the walkway.

The fact that Scott suffered from hardening of the arteries and high blood pressure, without evidence that these conditions caused him to become distressed or un-

conscious, does not warrant an inference that the cause of the fall into the pool was idiopathic. On the contrary, his good state of health, and lack of prior difficulty stemming from these conditions, justifies the inference that natural disease was not the cause of his fall into the pool. The proof as to "backward heart failure" amounts to nothing more than evidence that Scott's heart failed, which it must before death in all cases of drowning. There is no evidence that the heart failure preceded or caused Scott's entry into the pool.

Defendants raise the affirmative defense that Scott was guilty of willful negligence in attempting to walk alongside the pool in the dark. We do not regard decedent's conduct as even approaching the level of willful negligence.

"On appeal of a workmen's compensation case to the Supreme Court, if there is reasonable competent evidence to support the findings of fact in the trial court, the judgment, order, or award will not be modified or set aside for insufficiency of the evidence." Marion v. American Smelting & Refining Co., 192 Neb. 457, 222 N. W. 2d 366 (1974).

There is evidence in the record supporting the finding that the decedent suffered death as a result of an accident arising out of and in the course of his employment by the defendant. This evidence was obviously accepted by both the Workmen's Compensation Court and the District Court and we do not find it was error to do so.

We affirm the judgment. Plaintiff is allowed an attorney's fee of $750 for services in this court.

AFFIRMED.