LOIS NIESEN, WIDOW OF DONALD J. NIESEN, DECEASED, APPELLEE, V. LOGAN COUNTY CO-OP OIL ASSOCIATION ET AL., APPELLANTS.

340 N.W.2d 146

Filed November 10, 1983. No. 82-651.

Stephen Kay of Kay & Kay, for appellants.

Paul D. Merritt, Jr., and William P. Mueller of McGinley, Lane, Mueller, O'Donnell & Merritt, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

This is a proceeding under the Nebraska Workmen's Compensation Act arising out of the death of Donald J. Niesen, an employee of the Logan County Co-op Oil Association. The plaintiff, who is the widow of the deceased employee, recovered an award following the hearing before a single judge of the compensation court and, on rehearing, before a three-judge panel. The defendants have appealed.

The record shows that on September 8, 1979, the deceased was working in one of the service bays of the station. Niesen and a fellow employee had repaired a tire which had been removed from a pickup truck. The wheel on which the tire was to be mounted had a two-piece rim. The tire had been placed on the wheel and the separate rim installed on the wheel so that the tire was ready to be inflated. The manager of the co-op, Lauren Blincow, told Niesen to put the tire into the tire cage and inflate it. As Blincow left the service bay area, he saw Niesen reach for the airhose. Blincow then went to his office to open some mail.

Vernon J. Brosius, a customer of the station, entered the service bay area several minutes later. He saw Niesen lying on his back on the floor near the tire cage. According to Brosius, Niesen's forehead was bleeding from a small laceration, but his color appeared to be normal. Brosius went to the office and notified Blincow that Niesen was lying on his back on the floor in the service area. Blincow ran out to the bay area and found Niesen unconscious, but doing some "strained type moving." Blincow testified that Niesen was breathing at that

time but seemed to be straining for breath. Niesen's color was "bluish," and his face was bloated or puffy. Brosius summoned an ambulance, which arrived within about 15 minutes.

Blincow tipped Niesen's head back so that Niesen's air passages would be loosened, and began to apply pressure to Niesen's chest. Niesen groaned loudly three or four times. Brosius simultaneously gave Niesen mouth-to-mouth resuscitation. Brosius and Blincow then exchanged tasks. Blincow testified that as he blew air into Niesen's mouth, he could see Niesen's chest inflate. Niesen did not commence breathing on his own.

Niesen was taken by ambulance to a hospital at North Platte, Nebraska. When the ambulance personnel arrived, they continued the chest massage begun by Blincow and Brosius. During the trip to North Platte, they administered oxygen. In the emergency room Niesen received cardiopulmonary resuscitation (CPR). All attempts at resuscitation failed and Niesen was pronounced dead.

Blincow testified that in order to assist Niesen he had to kick some tools away from where Niesen was lying. Blincow stated that he noticed that Niesen's glasses were on the floor and had been broken at the right bow. Blincow also testified Niesen had a laceration about "three-quarters of an inch to an inch long" over his right eye, which was oozing blood. Blincow stated that Niesen did not have the cut or the broken glasses when he came to work that morning.

The tire which was in the cage had been inflated to an air pressure of 65 pounds and was perfectly seated on the rim. Later that afternoon, the wheel and tire were installed on the truck and the air pressure was reduced to 60 pounds.

In order for the plaintiff to recover compensation, the evidence must show that Niesen died as a result of an accident arising out of and in the course of his employment. It is undisputed that the deceased was

in the course of his employment when he died. The defendants contend that the evidence does not show that Niesen died as a result of an accident arising out of his employment. The burden of proof is on one asserting death from other than natural causes to establish such fact by a preponderance of the evidence. *Marasco v. Fitzpatrick*, 173 Neb. 272, 113 N.W.2d 112 (1962).

Findings of fact made by the compensation court will not be set aside on appeal unless clearly wrong. However, where there is not sufficient competent evidence in the record to warrant the making of the award, or the findings of fact do not support the award, this court must modify, reverse, or set aside the award. Neb. Rev. Stat. § 48-185 (Reissue 1978); *Husted v. Peter Kiewit & Sons Constr. Co.*, 210 Neb. 109, 313 N.W.2d 248 (1981).

The present case involves an unexplained death which occurred while the employee was at work. When an employee dies suddenly and mysteriously while engaged in his work, the burden of proof that his death resulted from an accident arising out of the employment rests upon the claimant for compensation, and such proof must amount to something more than a mere guess. *Shamp v. Landy Clark Co.*, 134 Neb. 73, 277 N.W. 802 (1938), quoting *Mullen v. City of Hastings*, 125 Neb. 172, 249 N.W. 560 (1933). See, also, *Mook v. City of Lincoln*, 143 Neb. 254, 9 N.W.2d 184 (1943); *Marasco v. Fitzpatrick, supra.*

Where the testimony gives rise to conflicting inferences of equal degree of probability such that a choice between them is a matter of conjecture, a workmen's compensation award cannot be sustained. *Scott v. Young Men's Christian Assn.*, 195 Neb. 746, 240 N.W.2d 587 (1976); *Pocevicius v. Armour & Co.*, 185 Neb. 668, 178 N.W.2d 265 (1970); *Husted v. Peter Kiewit & Sons Constr. Co., supra.*

The evidence strongly suggests that Niesen was dead at the time he was removed from the station to be taken to North Platte. The ambulance attend-

ants who administered CPR at the station and oxygen during the trip to North Platte testified that they did not observe Niesen to breathe and could obtain no pulse. It is undisputed that he was dead on arrival at the hospital in North Platte. No autopsy was conducted on Niesen's body.

Niesen was attended by Dr. Cleve Hartman at the emergency room in the hospital at North Platte. Dr. Dwight Larson, who had been Niesen's physician for a number of years, was called into the emergency room but did not examine or treat Niesen because Dr. Hartman was already attempting to resuscitate Niesen. Dr. Hartman had seen Niesen as a patient several times in the year before Niesen's death. Dr. Hartman stated that Niesen smoked a pack of cigarettes a day, and an examination by Dr. Hartman in 1978 revealed that Niesen had emphysema. Dr. Hartman had never conducted an EKG or treadmill test on Niesen. Dr. Hartman stated that upon arrival at the hospital Niesen was very cyanotic and had the small laceration on his face. Dr. Hartman testified over objection that, in his opinion, death was caused when Niesen injured his head and became unconscious. His tongue then fell back and obstructed his airway, leading to death from lack of oxygen. In his deposition, offered by the plaintiff, Dr. Hartman admitted that his opinion was speculative.

Dr. Larson testified from his records that although Niesen's mother was a diabetic and his father had died at age 76 from heart trouble, Niesen did not exhibit symptoms of diabetes or heart disease while under Dr. Larson's care.

Dr. Larson further testified that when Niesen arrived at the hospital, his color was darkly cyanotic. Niesen had a "small, one-inch laceration" over his right eye, and the area around the laceration was puffy and swollen. X-rays of Niesen's skull revealed no bone fracture or the presence of a foreign body. Dr. Larson testified over objection that, in his opin-

ion, Niesen died of an accidental injury to the head. Dr. Larson, who prepared the certificate of death which listed the immediate cause of death as respiratory failure as a result of upper airway obstruction by the tongue due to a cerebral concussion, did not examine Niesen in the emergency room.

Dr. Robert Sidner, an internist, testified as an expert witness for the defense. In response to a hypothetical question he stated that he did not believe that death was caused by an upper respiratory obstruction. Dr. Sidner, based upon the facts set forth in the hypothetical question, ruled out upper respiratory obstruction as a cause, for three reasons. First, Niesen was initially observed by Blincow to be breathing. Secondly, it would have been impossible for Niesen to groan if his airway was obstructed, the passage of air over the vocal cords being necessary to make such sounds. Lastly, Dr. Sidner stated that Niesen's chest would not have inflated if his airway was blocked. Dr. Sidner felt that the death was caused by ventricular fibrillation. This condition causes an immediate loss of consciousness and death within 3 to 5 minutes if not immediately treated. Dr. Sidner stated that coronary artery disease is usually responsible for such an attack, but in 30 percent of the cases no coronary artery disease is found in post mortem examination. He felt that Niesen exhibited several "risk factors" predisposing Niesen to such an attack.

The mortician who prepared Niesen's body for burial testified that Niesen's body did not present the difficulty often present in embalming coronary victims. The mortician stated that it is often necessary to wash out a great number of clots from the vascular system of a coronary victim in order to inject embalming fluid.

Richard Large, an accident reconstruction engineer called as a witness by the plaintiff, testified that a head injury could have been caused by striking an inflated tire with a hammer. The rebound

would cause the injury. He testified that in this case it would be reasonable to assume that the injury occurred in this manner. Two hammers are shown in photographs taken of the bay area on September 10, 1979, 2 days after the accident.

Although it is customary to use a hammer to seat the rim on the wheel preparatory to inflating the tire, there was no testimony that hitting the tire with a hammer is customary when inflating a tire. In fact, Blincow testified that to do so is dangerous, that it is not a customary procedure, and that the employees were instructed not to strike inflated tires with a hammer.

The plaintiff's theory of the case is that the compensation court could find that Niesen died as a result of respiratory failure following an injury to his head. The problem lies in the fact there is no evidence to show what caused the injury to his head, and there was no sufficient foundation for the medical opinions that Niesen died from an obstruction of the airway.

The value of the opinion of an expert witness is dependent on, and no stronger than, the facts on which it is predicated. Such an opinion has no probative force if the assumptions upon which it is based are shown not to be true. *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979); *State v. Johnson, ante* p. 391, 338 N.W.2d 769 (1983). An expert witness should not be allowed to express an opinion on an inadequate basis so that it amounts to a mere guess or conjecture.

No one saw the "accident," if one occurred, and there is no direct evidence as to how it may have happened. There is no evidence that Niesen was using a hammer while inflating the tire, and no evidence that it was customary to hit an inflated tire with a hammer. In fact, it is considered dangerous to do so. Although tools were found around the body, and hammers were present in photographs taken 2 days later, this does not give rise to an infer-

ence that, in the few minutes of Blincow's absence, Niesen inflated the tire, picked up a hammer and hit the tire, and was injured by the rebound. So far as the cross-peen hammer used by Large in his reconstruction demonstration is concerned, the evidence is that the particular hammer was not at the station on the day that Niesen died. The fact that the inflated tire was perfectly seated on the rim gives rise to an inference that there was no need, however dangerous, to use a hammer.

Two conflicting medical opinions as to cause of death were given: one that it was caused by a head injury which resulted in an airway obstruction; the other, that it was caused by ventricular fibrillation. Neither opinion was supported by facts making one a more likely cause than the other. Moreover, the opinion advanced by Dr. Hartman and Dr. Larson was not supported by the uncontradicted evidence as to what happened at the station. That evidence directly contradicts the conclusion of these physicians.

The evidence is undisputed that Niesen was breathing when Blincow arrived at the scene. We further note that Blincow cleared Niesen's air passages and heard Niesen groan several times. While administering artificial respiration, Blincow saw Niesen's chest inflate. This evidence indicates that Niesen's airway was not blocked. Moreover, we note that the time interval between the time Niesen was last seen in the bay area and the time when he was found and aid was administered was very short, such that it is extremely doubtful he could have suffocated from an obstruction of the airway. We note also that Niesen was given oxygen by the ambulance attendants.

The plaintiff argues that this case is similar to *Scott v. Young Men's Christian Assn.*, 195 Neb. 746, 240 N.W.2d 587 (1976), in which an award of benefits was affirmed. In that case the compensation court concluded that death was caused by accidental drowning rather than by a heart attack which

caused the decedent to fall into a pool. *Scott* differs from the present case in that there was considerable evidence to suggest that Scott accidentally fell into the pool. In the present case there is no evidence to suggest that Niesen was using a hammer and was accidentally hit by a rebound.

The present case is factually similar to *Marasco v. Fitzpatrick*, 173 Neb. 272, 113 N.W.2d 112 (1962). In that case an electrician who had been installing a new electrical service was found unconscious, with a bloody nose. An autopsy was inconclusive as to the cause of death. The claimant sought benefits, arguing that the decedent was electrocuted when he used a screwdriver to remove a plug from an energized drill. We said: "There is no evidence in this record that the decedent even had a screwdriver with him in the basement. The testimony of Washka [coemployee of decedent] is that his personal tools were outside.

". . . The plaintiff's theory in effect requires a finding, without a scintilla of evidence, that the drill was connected and that the decedent, an electrician, did one or more acts which no reasonably prudent electrician would do while a drill was energized." *Id.* at 280, 113 N.W.2d at 117.

We conclude that the evidence upon which the award was based was speculative and insufficient to sustain a finding that the deceased died as the result of an accident arising out of his employment.

The judgment is reversed and the cause remanded with directions to dismiss the petition.

REVERSED AND REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent in the instant case. It appears to me that this case presents purely a question of fact which the three-judge workmen's compensation panel resolved in favor of the appellee. The majority has determined to reject the appellee's experts on the basis that the conclusions reached by Dr. Larson have no basis. In fact, the court substi-

tutes its own "expert testimony" for that of the appellee's experts when it concludes that because Niesen's chest was seen to inflate when Blincow administered artificial respiration, this indicates that the airway was not blocked, such as to have caused Niesen's death. That may be the case, but there is no evidence in this record to support that fact. We should not be substituting our expertise for that of the experts called by the parties.

I would have concluded that, this being a fact question resolved in favor of the appellee, it should be affirmed.

I am authorized to state that White, J., joins in this dissent.