STEEN, Respondent v. POTTS, Appellant

(61 N. W.2d 825)

(File No. 9379.  Opinion filed December 30, 1953)

**Arend E. Lakeman,** Mobridge, for Plaintiff and Respondent.

**W.M. Potts,** Mobridge, for Defendant and Appellant.

SMITH, J.   The plaintiff, Paul Steen, a contractor and builder, pursuant to conversations had with W. M. Potts, a lawyer, repaired three houses in Mobridge, South Dakota. When the work was completed Mr. Steen rendered a separate bill for each house for labor at the rate of $2.50 per hour, and materials at retail price.   Mr. Potts paid· the amount  claimed for the repair of one of the houses when the statement was rendered.   Thereafter he ascertained that Mr. Steen had paid his help varying rates of from $1 to $1.75 per hour, and had received a contractor's 10% discount on some of the materials supplied.   Thereupon he refused to pay the

amount claimed on the two remaining accounts, and sought a readjustment of the settled account. He asserted that the work was done pursuant to an agreement that Mr. Potts would pay the actual cost of labor and materials and an hourly rate for the labor and services of Mr. Steen. This action resulted.

In his complaint Mr. Steen sought to recover for labor and materials on the basis set forth in his two unsettled statements of account, and Mr. Potts defended by alleging the above described agreement, and counterclaiming for the amount he claimed to have overpaid in settling the first described account. Throughout the trial Mr. Steen, on the one hand, claimed that his employment created the relationship of independent contractor and contractee, and on the other hand, Mr. Potts took the position that the agreement created the relationship of master and servant. The trial court instructed the jury that Mr. Steen "was an independent contractor in performing services and furnishing material" for Mr. Potts, and that he was entitled to recover the reasonable value thereof. This appeal is grounded principally upon the exception reserved to that instruction. It is urged here that under this record it was for the jury to say whether the relation created by the agreement of the parties was that of master and servant, or independent contractor and contractee.

■ A universally recognized rule is formulated in 56 C.J.S., Master and Servant, § 3(2), page 45, as follows: "In determining whether the relationship is that of master and servant or contractee and independent contractor, each case must be determined on its own facts and all the features of the relationship are to be considered."

In Cockran v. Rice, 26 S.D. 393, at page 397, 128 N.W. 583, 585, this court said,

> "* * * To constitute an 'independent contractor,' the contract itself must be one the performance of which will produce a certain understood and specified result—a contract which contemplates a definite beginning, continuance, and ending. A test of the relationship between the employer and

the employe is the right of the employer under the contract to control the manner and continuance of the particular service and the final result. No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses without regard to the final result of the work itself."

In Baer v. Armour & Company, 63 S.D. 299, 258 N.W. 135, 137, this court quoted with approval from Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N.W. 254, at page 256,

"* * * An independent contractor under the quite universal rule may be defined as one who carries on an independent business and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results. The commonly recognized tests of such a relationship are, although not necessarily concurrent or each in itself controlling: (1) The existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer. * * *"

■ The matters which among others are considered determinative in deciding whether one acting for another is an independent contractor or a servant are listed in Restatement, Agency, § 220, as follows:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b)   whether or not the one employed is engaged in a distinct occupation or business;

"(c)   the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d)   the skill required in that particular occupation;

"(e)   whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f)   the length of time for which the person is employed;

"(g)   the method of payment, whether by the time or by the job;

"(h)   whether or not the work is a part of the regular business of the employer; and

"(i)   whether or not the parties believe they are creating the relationship of master and servant."

■   The tests catalogued by these authorities are not exclusive.   The circumstances of a case may reveal other outstanding features which tend to support an inference that one working for another is an independent contractor. Moreover, none of these factors supplies an infallible test, and, with the possible exception of the element of "control of the details of the work"—which has been aptly referred to as the essence of the relation of contractee and independent contractor—the absence of any of these indicia is not necessarily controlling.   Most of the authorities place special emphasis upon the features of "control" and "independent calling". Halverson v. Sonotone Corporation, 71 S.D. 568, 27 N.W.2d 596, and cases cited therein.   And see annotations 19 A.L.R. 226, 19 A.L.R. 1168, 20 A.L.R. 684, and 75 A.L.R. 725.   For an instructive discussion of the authorities and of their historical background see the dissenting opinion of Mr. Justice Wolfe in Stover Bedding Co. v. Industrial Commission, 99 Utah 423, 107 P.2d 1027, 134 A.L.R. 1006.

■ ■   In the absence of a controlling specific provision of an unambiguous express contract, the conduct of the

parties and all of the surrounding circumstances may be looked to in determining their relationship. 56 C.J.S., Master and Servant, § 3(2), page 47. Where the inference is clear the relationship is determined by the court, otherwise the jury decides the question under instructions from the court as to the matters of fact to be considered. Carlson v. Costello, 74 S.D. 36, 48 N.W.2d 825, McCarthy v. City of Murdo, 68 S.D. 12, 297 N.W. 790, and Biggins v. Wagner, 60 S.D. 581, 245 N.W. 385, 85 A.L.R. 776.

■ We turn to the facts. In considering the ruling determining the nature of the relation as a question of law, we must accept the testimony of Mr. Potts, where conflict exists.

At the times in question Mr. Potts was engaged in the practice of law at Mobridge, South Dakota, and he was the owner of about fourteen houses, including his own home. For some time he had used a certain John Grace in making repairs on his property. In 1951 Mr. Grace moved from Mobridge. Thereupon Mr. Potts sought an arrangement with defendant Steen for the making of repairs upon his home and on two of his other properties. Mr. Steen was engaged in an independent calling as a builder and contractor. He rented and operated a woodworking shop equipped with machinery. During 1951 he had crews at work building houses in Mobridge. When first approached, Steen indicated that they were busy but would try to make the repairs. Potts told him they could be made at Steens' convenience as he could work them in with his other work. The work to be done was specified as a new roof on the kitchen, the tearing down of a chimney and putting in an air vent on the Potts' home; build a cement floor foundation under an east porch and a storm window on another house; and re-shingle and build a cement block foundation under a six-foot square entrance of the third house. As cold weather approached Mr. Potts urged Steen to make the repairs. Mr. Steen hired two additional carpenters, shifted some of his men from houses he was building and completed the repairs. One change was made as the work progressed. Steen saw Potts and suggested that the old shingles be removed from the kitchen of his home before applying a new roof. After looking at the

old shingles, Mr. Potts told the men on the job to take them off.

Use was made of a ladder and a shovel owned by Potts during the progress of the work on his home. Aside from the hammers supplied by the workmen, the other tools were supplied by Steen including his truck, jacks, saws, etc. Because the size was not in stock at the lumberyard, a storm window was made in Steen's shop. All of the materials were ordered and paid for by Steen.

Mr. Steen hired and paid the wages of the several men employed in doing the work. He also serviced their unemployment compensation and social security, and covered them with workmen's compensation insurance. He spent only a few hours in actual work on each of the jobs, but exercised complete control of the details of all of the work. Mr. Potts exercised no control over the details of the work. He saw the men working on his home, and thinks he was at one of the houses at a time when the workmen were placing some cement blocks. He was in California a portion of the time while the men were doing the work. After the repairs were completed he made a casual inspection and testified he was satisfied with the result.

Testimony given by Mr. Potts should be quoted. He was twice questioned about the conversations between himself and Mr. Steen. He testified:

"* * * I told him that, that he could take over the same as John Grace had—* * * I told him that for several years John Grace had worked for me and he had done work on all three of these houses and that I had confidence in Grace and told him what needed to be done, and that he would, himself, find the men, and get the material; and I would pay for the material and pay the men and I was wanting him to take over where John Grace left off, and I remember telling him that John Grace's services—that he received $1.50 an hour, that I was happy to pay it.

"Q. You told Mr. Steen that at that time? A. Yes, sir.

"Q. Mr. Steen didn't say that he would do

that work for $1.50 an hour, did he?  A.  Well, I don't think he said that exactly; he went ahead and did it."

He further testified:

"I said that I had those three houses that needed some repairs at once; most of it was shingling work.  I said that the way it should be handled would be the same as Johnny Grace had handled it; that that was in this way, that I would place complete confidence in him and that I would— * * * that I was only to get his advice and his recommendation as to what would be the best way to get that property in good repair.  That I wanted to hire him to give me that advice, and I wanted to entrust him with the selection of the materials and with the way the work should be done.  That I would pay for the materials and would pay for the labor, but he could select the labor that he needed to finish the job, the whole job, and for future work, and had in mind that he would continue permanently and **he said that was all right.**"

At another juncture he was asked, "When you employed Steen—contracted with him for that work, you didn't ask him what he charged?"  And he answered, "I relied on him the same as I did all the others, and then I got this complaint, that he was not paying his men."  By "the others" this answer referred to men who had handled plumbing and electrical jobs for Mr. Potts.  He was questioned about control of the details of the work and answered, "No, I had control; I am trying to tell them I delegated that to my employee, Mr. Steen, so that I wouldn't have to be around." The question was asked, "What direction did you give him? A.  I told him what I wanted done on each house, and in a general way the kind of materials that were to be used." The following further questions and answers appear in Mr. Potts' testimony:

"Q.  You knew he had, previous to that time, a crew of men working, did you not?  A.  It was my understanding that he had a crew working.

"Q.  And you didn't specify that he had to

do this work himself? A. No.

"Q. Did you specify as to any time during which any of this work should be done? A. No, I was just anxious to get it done.

"Q. Did you employ any one to work with Mr. Steen on this job? A. I don't think so. * * *

"Q. And did you know, at the time that you employed Mr. Steen who was going to work on the job? A. He may have told me but I don't remember if he did.

"Q. That was immaterial to you? A. It made no difference, just so he had good men.

"Q. The only thing you were interested in was if the work—was to have the work done satisfactorily, that repair work done. A. That is correct."

■ This quoted testimony of Mr. Potts must be viewed in the light of the conduct of the parties after their bargain was made, and of the fact that Steen on the one hand was a builder and contractor, and Mr. Potts was a practicing lawyer. For reasons we shall indicate, we think the testimony of Mr. Potts and the undisputed facts impel the conclusion that Mr. Steen acted for Mr. Potts in the course of his independent calling as a contractor, and warrants the instructions of the court.

■ The relation we are considering arose from an informal contract, the result of a series of conversations between the parties. Before the work was undertaken the terms of the contract had become reasonably specific as to the repairs to be made, the materials to be used, and the time the work was to be commenced and finished (that is, to be commenced forthwith and completed as early as possible in view of other work in progress by Steen), and it was agreed that Mr. Potts would pay the cost of labor and material. The parties did not fix the compensation to be received by Mr. Steen, but in such circumstances the law imposes the standard of reasonableness. Naughton v. City of Sioux Falls, 3 S.D. 90, 52 N.W. 324, and 1 Williston, Contracts, Rev.Ed., § 41. In our opinion, the parties became obligated and the right to terminate the relation at will, so earnestly

asserted by Mr. Potts, did not exist. Here was a contract the performance of which would produce a certain understood and specified result,—a contract which contemplated a definite beginning, continuance and ending, in accordance with Cockran v. Rice, supra.

In its performance Mr. Steen used some of his crew of workers and two additional carpenters he had hired for this work; he paid the wages of the workmen, cared for such incidents of their employment as workmens' compensation insurance, social security, and unemployment compensation; he kept the only records of their time; he furnished the tools as indicated supra, and he directed all of the details of their labor. In addition, he selected and furnished the material.

Mr. Potts, on the other hand, who knew Mr. Steen was a builder and a contractor when he sought his assistance, hired no men, kept no records, paid no wages to the men or Mr. Steen, advanced no funds for either wages or material, and paid no attention to the details of the work. In fact he did none of the things customarily done by a master for his servants. When the work was complete he made an inspection to ascertain if the results were satisfactory to him.

All of the usual indicia of the independent contractor are here. Of course, the right of control could have existed, although it was not exercised by Mr. Potts. However, the fact that such control was not exercised in this instance harmonizes with all of the other badges we deem revealing and but strengthens the inference reason impels. That which was said in the dissenting opinion in Stover Bedding Co. v. Industrial Commission, supra, is apposite, viz., "It is ventured that the tests or right of choice, right to discharge, type and manner of remunerating, manner in which accounts are kept, represent a cluster which throw light on the right to control where there is little or no evidence of any actual controlling. But where one in an independently established business is engaged to do a definite job or piece of work, the likelihood that he rather than the owner or employer is to control the manner and means of doing the work would be very strong, although nothing was said about control." [99 Utah 423, 107 P.2d 1042.] In view of all of these facts, we think reason will permit only one conclusion, viz., that the

control of the details of the work was yielded to Mr. Steen as an independent contractor.

In upholding the instruction of the trial court as to the character of the relation, we have treated the cross-examination of Mr. Steen before trial as a part of the record, and have given very careful attention to the testimony pointed out as indicating he regarded himself as a superintendent of construction. Read in context and in connection with his statement that he was the contractor on the job, we hold it insufficient to support a finding that the relationship was that of master and servant.

Mr. Steen's memory of the conversations of the parties differs from that of Mr. Potts. In substance he testified that without any mention of the charge he would make for doing the job, or of payment by Mr. Potts of the cost of labor and material, Mr. Potts requested him to make the specific repairs we have described and he did the work pursuant to that request. Aside from this conflict, the facts we have related are without substantial dispute. Because we have concluded that the judgment must be reversed and a retrial may follow, we deem it appropriate to observe that if the fact was as stated by Mr. Steen, nevertheless the resulting relation was that of contractee and independent contractor. McCarthy v. City of Murdo, 68 S.D. 12, 297 N.W. 790, and Woodhall v. Irwin, 201 Mich. 400, 167 N.W. 845, and see 19 A.L.R. 1285, and cases cited in note 3. On principle, when specific work is undertaken in response to such a request, the contractee should not have a right to revoke his offer and terminate the work. Restatement, Contracts, § 45; 1 Williston, Contracts, Rev. Ed., § 60A. Hence, according to the version of Mr. Steen, the operative facts are that Mr. Potts requested one he knew to be engaged in the business of contracting to do a specific job, to be commenced and completed within a reasonable time, for a reasonable compensation. While the work was progressing as anticipated, Mr. Potts could not rightfully order the work discontinued. As the work was performed Mr. Steen did everything customarily done by an employer, and directed the details of the work. Mr. Potts, on the other hand, did nothing but inspect the result. Such controlling facts, in our opinion, command a holding that

Mr. Steen had control of the details of the work and acted for Mr. Potts as an independent contractor.

The trial court instructed the jury that "Under the undisputed evidence in this case, and under the law, the Court instructs you that plaintiff was an independent contractor in performing services and furnishing material for the defendant in the repair and improvement of defendant's three houses in Mobridge. Therefore, the only question for you to determine is the reasonable value of the labor and materials furnished by the plaintiff in repairing and improving defendant's three houses. You are further instructed that as an independent contractor the reasonable value of materials and labor may include a claim for a reasonable profit, and where one furnishes laborers for another, no price being agreed upon, he is not limited in his recovery to the amount which he paid the workmen."

Unquestionably the measure of Mr. Steen's damages, if his memory of the conversations were accepted by the jury, would be the reasonable value of the labor and materials furnished Mr. Potts. Naughton v. City of Sioux Falls, 3 S.D. 90, 52 N.W. 324; 17 C.J.S., Contracts, § 367, page 826; 9 C.J., Building and Construction Contracts, § 154, p. 818.

However, Mr. Potts by pointed exception directed the court's attention to his contention that this instruction limited the jury to a consideration of Mr. Steen's version of their conversations. We think the exception was well taken. The jury was at liberty to accept the testimony of Mr. Potts and find it was agreed he would pay the actual cost of labor and material. Under such a contract, instead of the measure of damages set forth in the foregoing instruction, recovery would have been for the full actual labor and material costs, plus such an amount as would reasonably compensate Mr. Steen for all he did as a contractor in the performance of his contract. We think this error was prejudicial to Mr. Potts. For that reason we must reverse the judgment of the learned trial court.

The judgment of the trial court is reversed.

ROBERTS, P. J., and RUDOLPH and LEEDOM, JJ., concur.

SICKEL, J., concurs in the reversal.