LOREN K. NUSSBAUM, APPELLANT, V. LYLE F. WRIGHT ET AL., APPELLEES.

350 N.W.2d 559

Filed June 22, 1984. No. 83-707.

Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, P.C., for appellant.

Geoffrey V. Pohl and R. Kevin O'Donnell of McGinley, Lane, Mueller, O'Donnell & Merritt, for appellee Wright.

Reddish, Curtiss, Moravek & Danehey, for appellee Hinton.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and GRANT, JJ.

WHITE, J.

This is an appeal from the order of a three-judge panel of the Nebraska Workmen's Compensation Court denying relief to the appellant, Loren K. Nussbaum. The three errors assigned are that the Workmen's Compensation Court was clearly wrong in (1) finding that appellant was not, at the time of his injury, a loaned employee of Bartt S. Hinton, (2) failing to find that Lyle F. Wright was a statutory employer of appellant, Neb. Rev. Stat. § 48-116 (Reissue 1978), and (3) failing to find that a previous judgment of the compensation court finding that appellant, at the time of his injury, was the employee of one Darrell Carlton Hinton, also known as "Jeff" Hinton (Jeff), did not bar the action against Lyle F. Wright and Bartt S. Hinton under the doctrine of res judicata. The lower court found against appellant on the first two assignments and thus did not rule on the issue raised by the third assignment.

We review the decision of the compensation court for error only, keeping in mind that findings of fact will not be set aside unless clearly wrong. *Niesen v. Logan County Co-op Oil Assn.*, 215 Neb. 587, 340 N.W.2d 146 (1983).

A brief recitation of the facts is necessary. Jeff Hinton and Bartt Hinton are father and son. Each is engaged in a general contracting business. No evidence was presented that the two were associated in a partnership or joint undertaking; rather, the evidence shows that each undertook separate general construction tasks as an individual proprietor. For approximately 2 months prior to the accident of July 31, 1981, appellant was the full-time employee of Jeff Hinton, generally engaged in erecting fences and corrals for local ranchers. Shortly before July 31, 1981, Bartt Hinton called his father, and the two agreed upon, or Bartt requested, the assistance of Jeff and the appellant in the completion of a painting project at the ranch of Lyle Wright near Hyannis, Nebraska. The project consisted of painting the home and ranch buildings, and the cost was agreed to between Wright and Bartt Hinton on a bid amount. Wright did not supervise the work nor exercise any control over who performed the work. The evidence discloses that Wright is engaged in the occupation of a rancher and has no other occupation. It is also established that neither Bartt Hinton nor Lyle Wright has workmen's compensation coverage.

On the day of the accident appellant rode out to the Wright ranch with Jeff Hinton. Jeff directed appellant to mix paint, directed his work, asked if appellant wished to take a break, and received the report of the injury. The injury happened when appellant, who was spray painting the roof of a garage, slipped and impaled his palm on a nail in the roof. Later, at lunchtime, the spray equipment was cleaned with diesel fuel, and that afternoon the hand began to swell. Appellant went to a hospital and underwent a long and painful treatment for the result-

ing inflammation and infection. Ultimately, one finger and a portion of another were required to be amputated. That appellant suffered a severe and permanent disability is not disputed.

Appellant filed suit in the Workmen's Compensation Court and secured a judgment against Jeff Hinton. Jeff responded by filing a petition of voluntary bankruptcy.

Appellant then filed this suit against Bartt Hinton, claiming that he was an employee of Bartt, and against Lyle Wright, claiming that Wright was a statutory employer.

As stated previously, there was no evidence that the Hintons operated as a partnership in the painting of the Wright farm. The negotiating took place between Wright and Bartt Hinton, and Wright looked to Bartt only for completion of the project. Rather, the evidence appears that appellant was a "loaned employee."

In *Mid-America Pipeline Co. v. Warren*, 187 Neb. 710, 713-14, 193 N.W.2d 749, 751-52 (1972), we quoted with approval from *Shamburg v. Shamburg*, 153 Neb. 495, 45 N.W.2d 446 (1950):

"* * * the general test in determining whether an employee is a servant of his original master, or of the party to whom he has been furnished, is whether in the particular service which he is engaged to perform he continues to be liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired. * * *

"* * * 'It is quite generally agreed that in order to transfer liability from the general employer to the one to whom the employee is loaned, there must be some consensual relationship between the loaned employee and the employer whose service he enters, sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direc-

tion of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do he is performing his duty to the employer who gave the order. * * * Consent cannot be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another.'

"* * * 'Before such new relationship can be made effective the servant must understand that he is submitting himself to the control of the new master.' "

Larson, in his book on workmen's compensation, lists three necessary conditions before the employer to whom the employee is loaned can be found liable for injuries to the loaned employee:

(a) the [loaned] employee has made a contract of hire, express or implied, with the special employer;

(b) the work being done is essentially that of the special employer; and

(c) the special employer has the right to control the details of the work.

1C A. Larson, The Law of Workmen's Compensation § 48.10 at 8-317 (1983).

As there was evidence to support the finding of the compensation court that no contract was entered into or could be implied between appellant and Bartt Hinton and that appellant remained under the control of Jeff Hinton, we must affirm the decision of the three-judge panel denying recovery as against Bartt Hinton. The first assignment is without merit.

As to the alleged liability of Lyle Wright, the appellant, in the words of the compensation court, is "on the horns of a dilemma."

If, on the one hand, the work of painting is within the usual scope of Wright's business activity as a rancher, Wright was exempt from the act as an em-

ployer "of farm or ranch laborers." Neb. Rev. Stat. § 48-106(2) (Reissue 1978).

The question as to whether the "scheme" and "artifice" statute, § 48-116, impliedly amends the exemption statute, § 48-106(2), has not been directly ruled on by this court. In *Keith v. Wilson*, 165 Neb. 58, 84 N.W.2d 192 (1957), Peter Kiewit, an employer of farm labor, was held liable for injuries to an employee of a contractor engaged in the cutting and stacking of hay. However, the basis of that liability was stated as follows: "In the case at bar Kiewit had a statutory duty, *since he had elected to come under the workmen's compensation law*, to require Wilson to procure workmen's compensation insurance which he failed to perform." (Emphasis supplied.) *Id.* at 63, 84 N.W.2d at 196. That case does not control here.

In the Colorado case of *Hefley v. Morales*, 197 Colo. 523, 595 P.2d 233 (1979), Hefley hired Ochoa and a crew employed by Ochoa (including Morales) to cut corn ensilage. Ochoa did not procure workmen's compensation insurance, and Morales was injured. Colo. Rev. Stat. § 8-48-101 (1973) is analogous to § 48-116 and imposes liability when a person contracts out any part of his business work to a contractor's employees who are engaged in such work while in the employ of the contractor. In considering whether the section superseded the exemption under the act for certain farm and ranch laborers, the Colorado court said:

Here, we must evaluate the interaction of the contracting out provisions and the exemption for farm and ranch labor. The terms of the exemption provide guidance inasmuch as the statute says "Articles 40 to 54 of this title are not intended to apply to employers of farm and ranch labor. . . ." The wording indicates that the General Assembly did not intend for the contracting out provisions to apply to exempted employers of farm and ranch labor. Further, the limiting

language contained in the contracting out provision reinforces the conclusion that it is not intended to apply to employers otherwise exempted. It states that a person or company contracting out all or part of its work "shall be construed to be an employer *as defined in Articles 40 to 54 of this title* and shall be liable as provided in said articles." (Emphasis added.)

The purpose of the contracting out provision is to prevent employers from avoiding financial responsibility by contracting out their regular work to uninsured independent contractors. In the exemption provision, the General Assembly clearly intended to exempt persons who directly employed farm and ranch labor on a limited scale.

We conclude that the contracting out provision does not modify the exemption for farm and ranch labor.

*Id.* at 525-26, 595 P.2d at 234-35. We conclude similarly that the provisions of § 48-116 do not supersede the exemption provisions of § 48-106(2).

On the other hand, if the painting was not in the usual course of Wright's business, the provisions of Neb. Rev. Stat. § 48-115 (Reissue 1978) would bar any recovery by appellant from Wright. Section 48-115 provides in part:

The terms employee and workman are used interchangeably and have the same meaning throughout this act. The same terms include the plural and all ages and both sexes, and shall be construed to mean:

. . . .

(2) Every person in the service of an employer who is engaged in any trade, occupation, business, or profession as described in section 48-106, under any contract of hire, expressed or implied, oral or written . . . .

. . . .

The said terms shall not be construed to in-

clude any person whose employment is not in the usual course of the trade, business, profession or occupation of his employer.

Obviously, under the facts of the instant case, the work of painting ranch buildings is occasional only, and not regular; thus, it was casual. See, *McConnell v. Johnston*, 139 Neb. 619, 298 N.W. 346 (1941); *Guse v. Wessels*, 132 Neb. 41, 270 N.W. 665 (1937).

The decision of the Workmen's Compensation Court was in all respects correct and is affirmed.

AFFIRMED.