**M.J. DALY COMPANY, Movant,**

v.

**Clark A. VARNEY and Insurance Company of North America, Respondents.**

Supreme Court of Kentucky.

May 2, 1985.

Rehearing Denied Sept. 26, 1985.

Mark G. Arnzen, Robinson, Arnzen, Parry & Wentz, Covington, for movant.

Michael C. Arnold, Covington, Gary D. Garrison, Louisville, for respondents.

LEIBSON, Justice.

On May 12, 1981, Clark Varney was burned by a fire and explosion occurring on the premises of M.J. Daly Co., a chemical distributing plant in Ludlow, Kentucky. At the time Varney was employed on the payroll of Personnel Pool of Northern Kentucky, Inc., a labor service company. M.J. Daly Co. contracted with Personnel Pool for his services.

Varney filed a workers' compensation action against Personnel Pool, and has collected workers' compensation benefits. At one point during the workers' compensation proceedings Personnel Pool moved to join M.J. Daly Co. as a co-employer. Varney opposed the motion. The president of M.J. Daly Co., Joseph Brokamp, testified by deposition to the effect that Varney was not a company employee, that Varney had been offered employment by M.J. Daly Co. and refused it, preferring to remain an employee of Personnel Pool on assignment to M.J. Daly Co. The Workers' Compensation Board overruled the motion to join the M.J. Daly Co. as an employer.

The present case is a tort action by Varney against M.J. Daly Co., charging its negligence was responsible for his injuries and seeking common law damages. The trial court granted summary judgment on grounds that, as a matter of law, M.J. Daly Co. was Varney's "employer" as that term is used in the Workers' Compensation Law, and, as such, immune from the common law action by reason of KRS 342.610 and KRS 342.690, the exclusive remedy provisions of the Workers' Compensation Law.[1] The Court of Appeals reversed, holding that Varney had retained the right to sue M.J. Daly Co. if he can prove fault. We agree.

The question is whether M.J. Daly Co. can claim statutory immunity based on the exclusive remedy provisions of the Workers' Compensation Act by qualifying as either an "employer" or as a "contractor" within the definition of those terms as used in the Act.

The term "contractor" is defined in the Act. KRS 342.610(2). It is limited to "common usage," meaning the situation where a "'principal contractor' engages subcontractors to assist in the performance of the work or the completion of the project which the 'principal contractor' has undertaken to perform *for another.*" *Bright v. Reynolds Metals Co.,* Ky., 490 S.W.2d 474, 476 (1973). (Emphasis original). Thus viewed, there is no contractor/subcontractor question here. The question is limited to whether M.J. Daly Co. qualifies as a "employer" as that term is used in the Workers' Compensation Act.

In the past this Court has broadly construed the term "employer" to provide

---

1. KRS 342.610 specifies in Section (1) that "[e]very employer subject to this chapter shall be liable for compensation," and, in turn, in Section (4) that "all rights to sue the employer for damages on account of such injury" are waived.

KRS 342.690(1) provides: "If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employe," and also that "[f]or purposes of this section, the term 'employer' shall include a 'contractor' covered by subsection (2) of KRS 342.-610, whether or not the subcontractor has in fact, secured the payment of compensation."

coverage within the Act. *Duke v. Brown Hotel Co.*, Ky., 481 S.W.2d 289 (1972). Notwithstanding, before there is an employer/employee relationship, there must be a contract of hire between the employer and the employee, expressed or implied, containing all elementary ingredients for a contract. *Rice v. Conley*, Ky., 414 S.W.2d 138 (1967).

The present situation is somewhat unique. It involves a new and fast growing industry of labor suppliers, manpower services, providing temporary help to all kinds of businesses, some of which have no other employees and have made no arrangements for workers' compensation, unemployment insurance, or the myriad other employee benefits normally attendant to the relationship between a business and the persons performing services for the business. The manpower service company is in truth and in fact, not just by legal fiction, the employer to whom the worker looks for the benefits of employment, including workers' compensation. The business contracting for labor services may, as here, use such services over a long period of time and in significant numbers to augment its own employees. But often such a business has no other employees and needs temporary or part time help for a matter of days or a matter of hours. The labor service company employs and pays the employee, who does all the payroll paper work, and maintains the benefits for the employee. The employee looks to the labor services company for the benefits of employment. The business utilizing the service contracts to pay a fee and assumes no responsibility as an employer to the employee. In this case Varney expressly refused status as an employee of M.J. Daly Co. so that he could maintain his status as an employee of Personnel Pool.

A labor services company, unlike an employment agency, does not serve as a go-between to obtain employment for job seekers, but instead, by choice of all concerned, the labor services company rather than the business utilizing the services, employs the workers.

In 1C A. Larson, *The Law of Workman's Compensation* § 48 (1983), the author sets out the three pronged test for the determination of when an employee is a loaned servant of another employer for purposes of workers' compensation coverage:

"[O]nly if: (a) the employee has made a contract of hire, expressed or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work."

"When [and only when] all three of the above conditions" are satisfied does the necessary employment relationship exist as to the special employer. *Id.*

It is clear that the work being done here was essentially that of the special employer and that the special employer had the right to control the details of the work. But the third element, the contract of hire, express or implied, does not exist. Indeed, the uncontradicted evidence from both parties excluded a finding of employment. The employee/employer relationship was rejected. Prof. Larson points out in his treatise:

"[F]irst, under a system of free enterprise and free contract, workers and employers must be allowed to make any arrangement they choose, and, if a worker prefers to be an entrepreneur without compensation protection rather than an employee with compensation protection, that is his privilege...." Larson, *supra*, § 46.10, at 8–200.

....

"[I]t is quite possible that the worker honestly does not want to be an employee; and paternalism should not be carried so far that the state says to him, 'We do not care what you want; we think employee status with compensation protection is better for you.'" *Id.* § 46.-30 at 8–216.

In Kentucky, KRS 342.640(1) codifies the requirement that an employee must have a contract of hire, expressed or implied, in order to be deemed an employee. Here the written contract between M.J. Daly Co. and Personnel Pool expressly provided that

Personnel Pool would be responsible for workers' compensation for employees furnished to M.J. Daly Co. Limited only to the unique situation created by the labor services or manpower companies, where the intent of the parties involved is expressed through such contractual relationships, the parties have fixed their status and we recognize their right to do so.

■ M.J. Daly Co. has cited cases from other jurisdictions interpreting their workers' compensation statutes to mandate the employer/employee relationship in the present situation regardless of the intent of the parties. E.g. *Wright v. Habco, Inc.*, Mo., 419 S.W.2d 34 (1967). In Kentucky the Workers' Compensation Law is optional or elective in character, rather than compulsory, and the relationship is contractual in nature. *McNeese Construction Co. v. Harris*, Ky., 273 S.W.2d 355 (1954). Our Kentucky Constitution, §§ 14, 54, and 241, preserve to all persons, including the employee, the common law remedy in tort against a party at fault, except where the employee has made a voluntary election to waive such constitutional rights, express or implied. The foundation for declaring workers' compensation constitutional in Kentucky is built on recognition of this principle. *Wells v. Jefferson Co.*, Ky., 255 S.W.2d 462 (1953). In *Wells*, we recognized a "presumed acceptance" as a waiver of the worker's constitutional rights, but we did not abolish the acceptance and waiver requirements.

■ The factors in the present case, perhaps unique to the relationships that exist in a labor services company, are that the employee has rejected employment status with the special employer, and his right to do so should be recognized. Likewise, in a free enterprise system the right of a business to utilize a labor services company and contract with that company to assume the responsibilities of being the employer, including responsibility for providing workers' compensation coverage, should be recognized.

■ On the other hand, such election carries with it the concomitant responsibility of common law liability for damages in a tort action to a person who can prove negligence caused his injury. KRS 342.700(1) sets out the remedies when a third party is legally liable. By so contracting as to avoid employer status and the responsibilities that go with such status, M.J. Daly Co. retained third party status and the legal liability that goes with it.

■ The burden for common law liability on the business using a labor services company in this manner is not as significant as might appear at first blush. It is not liability without fault as in workers' compensation. Fault must be proved. Further, just as M.J. Daly Co. contracted with Personnel Pool to assume responsibility for workers' compensation as to Varney, so also a business utilizing a labor services or manpower company by its contract can require indemnification for any liability in tort that might occur by reason of utilizing the services of such a company. It then becomes just another cost of doing business for the labor services company which must be figured into its charges.

The bottom line is that the parties are free to contract as they wish. We are obliged to accept the status which they have expressed for themselves.

The decision of the Court of Appeals is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion.

STEPHENS, C.J., and AKER, LEIBSON and WINTERSHEIMER, JJ., concur.

GANT, STEPHENSON and VANCE, JJ., dissent.