**Dawn McMASTER, Plaintiff,**

v.

**AMOCO FOAM PRODUCTS COMPANY, Defendant.**

**No. Civ 89–4065.**

United States District Court, D. South Dakota, S.D.

May 1, 1990.

James L. Hoy, Sioux Falls, S.D., for plaintiff.

Michael L. Luce and Susan Jansa Brunick, Sioux Falls, S.D., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, District Judge.

This case is before the Court on defendant Amoco Foam's motion for summary judgment. The issues presented are ones of first impression in South Dakota:

I. When an employee of a temporary employment agency has been assigned to a temporary or special employer, is that special employer considered her employer under the exclusivity provision of South Dakota's Workmen's Compensation statute?

II. If an employee's temporary or special employer paid the temporary employment agency an hourly fee for her services which included a sum for the workmen's compensation insurance maintained by the employment agency on the employee may the employee still choose to sue the special employer in tort pursuant to S.D.C.L. 62–3–11?

For the reasons set out in the opinion below, the Court finds that both the temporary employment agency and the company that an employee is assigned to are employers for purposes of the exclusivity provision of South Dakota's Workmen's Compensation statute, S.D.C.L. 62–3–2. Furthermore, when the special employer is charged for the employee's workmen's compensation insurance, which is procured and maintained by the temporary employment agency, the special employer has complied with S.D.C.L. 62–5–1 to 62–5–5 and is entitled to the protection of the exclusivity provisions. Therefore, summary judgment will be granted to defendant Amoco Foam.

## FACTS

The facts in this case are not in dispute. Plaintiff, Dawn McMaster, began working for a temporary employment agency, Staff Pros, in September of 1988. Staff Pros allowed their employees to accept or reject offered employment; and they allowed employers they served to accept or reject employees. Ms. McMaster was offered and accepted a temporary position at a manufacturing plant owned and operated by Bedford Plastics, the predecessor of Amoco Foam.

Ms. McMaster worked in this position for about 7 weeks. During that time, Bedford was billed by Staff Pros at an hourly rate for Ms. McMaster's work. This hourly rate included the employee's salary, a margin for profit, and various expenses related to the employee, including workmen's compensation insurance and state and federal taxes.

Ms. McMaster received her paycheck from Staff Pros and was paid at a different hourly rate than other Amoco workers; yet, once assigned to Amoco, Ms. McMaster was under the direct supervision, control, and direction of Amoco for all work-related duties. In addition, all her equipment and supplies were the responsibility of Amoco.

On November 15, 1988 Ms. McMaster was working on a Gabbler—a machine that manufactures bowls. Sometime in the early morning hours, the Gabbler was shut down to allow the plaintiff to clean plastic from its working parts. Without checking to see that plaintiff's hands were clear, another employee turned the machine on, and the index and ring fingers on the plaintiff's right hand were severed. Attempts to reattach the fingers were unsuccessful. After the accident Ms. McMaster received workmen's compensation payments from Cigna Insurance, Staff Pro's carrier.

This negligence action was brought against Amoco Foam on or about May 25, 1989. Plaintiff requested both compensatory and punitive damages, subject to Cigna's subrogation rights under S.D.C.L. 62–4–39. Amoco moved for summary judgment claiming that under S.D.C.L. 62–3–2 workmen's compensation is plaintiff's exclusive remedy.

### SUMMARY JUDGMENT

"Summary judgment is appropriate only when there is no genuine issue as to any material fact and the case may be decided on purely legal grounds." Fed.R.Civ.P. 56(c); *White v. Farrier*, 849 F.2d 322, 325 (8th Cir.1988). "The Court must view the evidence in the light most favorable to the nonmoving party, giving [them] the benefit of all reasonable factual inferences." *Id.*

(citing, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

### DISCUSSION

I. When an employee of a temporary employment agency has been assigned to a temporary or special employer, is that special employer considered her employer under the exclusivity provision of South Dakota's Workmen's Compensation statute?

■ S.D.C.L. 62–3–2 is South Dakota's Workmen's Compensation exclusivity provision:

> *The rights and remedies herein granted to an employee* subject to this title, on account of personal injury or death arising out of and in the course of employment, *shall exclude all other rights and remedies of such employee,* his personal representatives, dependents, or next of kin, *on account of such injury or death against his employer* or any employee, partner, officer or director of such employer, except rights and remedies arising from intentional tort. (emphasis supplied)

Employer is defined under S.D.C.L. 62–1–2 as follows:

> As used in this title, unless the context otherwise plainly requires, the term "employer" shall include ... and any individual, firm, association, or corporation, ... using the service of another for pay.

An employee is defined by S.D.C.L. 62–1–3:

> As used in this title, unless the context otherwise plainly requires, the term "employee" shall mean every person, including a minor, in the services of another under any contract of employment, express or implied,....

In most situations, when determining if an employer-employee relationship exists, South Dakota case law focuses on the right to control the details and duration of the work. *Jeitz v. Fleming*, 88 S.D. 239, 217 N.W.2d 868, 871 (1974) (citations omitted). However, all features of the relationship must be considered and other factors may

support a different finding. *Id.* Though normally the existence of an employee-employer relationship is a factual question, if the inference is clear, the relationship is determined by the court. *Steen v. Potts,* 75 S.D. 184, 61 N.W.2d 825, 828 (1953). *See also;* Restatement (Second) of Agency § 220.

South Dakota courts have not yet addressed the question of who is the employer in a labor broker or temporary employment situation. The employee could be the employee of the labor broker, his general employer, or the employee of the company for whom the work is actually performed, his special employer, or an employee of both. When interpreting the labor-broker situation under Arkansas law, the Eighth Circuit stated:

> [a]s a matter of common experience and of present business practices in our economy, it is clear that an employee may be employed by more than one employer even while doing the same work.

*Beaver v. Jacuzzi Brothers, Inc.,* 454 F.2d 284, 285 (8th Cir.1972). *See also; Vanterpool v. Hess Oil V.I. Corp.,* 766 F.2d 117 (3rd Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777.

Other jurisdictions interpreting workmen's compensation statutes which are similar to South Dakota's have also found that in the labor-broker situation, both the special employer and the labor broker are employers under these statutes. *Danek v. Meldrum Mfg. & Engineering Co., Inc.,* 312 Minn. 404, 252 N.W.2d 255 (Minn.1977); *Freeman v. Krause Milling Co.,* 43 Wis.2d 392, 168 N.W.2d 599 (citations omitted) (1969). In reaching this conclusion, those jurisdictions applied a test proposed by Professor Larson in his treatise on workmen's compensation:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
> (a) the employee has made a contract of hire, express or implied, with the special employer;
> (b) the work being done is essentially that of the special employer; and
> (c) the special employer has the right to control the details of the work.
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

1C Larson, Workmen's Compensation Law, § 48.00 (1986).

In the temporary employment agency situation, the Larson test is consistent with South Dakota case law concerning control and also with the workmen's compensation statutory definitions of employer-employee which would require at least an implied contract. Under the Larson definition, a temporary employee supplied by a temporary employment agency is clearly an employee of both the temporary employment agency and the special employer; the employee has an implied contract with the special employer for services; the special employer is in direct control of the details of the employee's work; and the work performed is obviously that of the special employer.

The Court finds that under South Dakota's Workmen's Compensation statutes, an employee of a temporary employment agency is employed by both the agency and the special employer to which she has been assigned.

II. If an employee's special employer paid the temporary employment agency an hourly fee for her services, which included a sum for the workmen's compensation insurance maintained by the employment agency on the employee, may the employee still choose to sue the special employer in tort pursuant to S.D.C.L. 62–3–11?

■ Ms. McMaster claims that even as an employee, she is not prevented from bringing her action against Amoco because their predecessor, Bedford, elected not to operate under the provisions of Chapter 62 of S.D.C.L. She relies on S.D.C.L. 62–3–11:

**62–3–11. Election to proceed against employer—Options.** Any employee, who is employed by an employer who is deemed not to operate under this title in accordance with § 62–5–7, or the depend-

ents of such deceased employee, may elect to proceed against the employer in any action at law to recover damages for personal injury or death; or may elect to proceed against the employer in circuit court under the provisions of this title, as if the employer had elected to operate thereunder by complying with §§ 62–5–1 to 62–5–5, inclusive. . . .

Ms. McMaster claims that by not directly paying for her workmen's compensation insurance, Bedford elected not to operate under the Workmen's Compensation chapter pursuant to S.D.C.L. 62–5–7:

> **62–5–7. Failure to secure payment as election not to operate under title.** Any employer other than the state, a municipality, or other political subdivision of this state, who has failed to comply with the provisions of §§ 62–5–1 to 62–5–5, inclusive, shall be deemed to have elected not to operate under the provisions of this title.

 So long as a special employer has required the nominal or general employer to procure insurance, the costs of which were transferred to the special employer, the special employer has "insured" the employee. *Vanterpool*, 766 F.2d at 124–125 (citing, *Lugo Sanchez v. Puerto Rico Water Resources Authority*, 105 P.R.R. 850 (1977)).

The Court finds that by paying a temporary employment agency a set fee for an employee's services, which includes the cost of procuring workmen's compensation insurance for the employee, a special employer such as Bedford Plastics was operating under the Workmen's Compensation statutes. Additionally, S.D.C.L. 62–3–11 merely allows the employee to elect between payments set by workmen's compensation and a tort action. It specifically forbids recovery under both; therefore, Ms. McMaster has elected to take the workmen's compensation payments which she has already received.

## CONCLUSION

Because an employee of a temporary employment agency is also an employee of the special employer she is currently assigned to and because Bedford was complying with the workmen's compensation statute, Ms. McMaster's tort action against Amoco is foreclosed by S.D.C.L. 62–3–2.

The Court finds it is not necessary to address whether the loaned-servant doctrine would mandate the same finding in other situations and therefore expressly limits its holding to temporary employment agency situations.

Now, therefore,

IT IS ORDERED:

(1) That the defendant's Motion for Summary Judgment is granted.

(2) That the Clerk of Courts is directed to enter judgment for the defendant.