Kevin A. GOODMAN, Plaintiff
and Appellant,

v.

SIOUX STEEL COMPANY, Defendant
and Appellee.

No. 17091.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1991.

Decided Sept. 11, 1991.

Harlan A. Schmidt, Spearfish, for plaintiff and appellant.

Gary P. Thimsen, Woods, Fuller, Schultz and Smith, Sioux Falls, for defendant and appellee.

WUEST, Justice.

On September 14, 1987, Kevin A. Goodman (Goodman) was seriously injured while working at Sioux Steel Company (Sioux Steel) in Sioux Falls, South Dakota. Goodman was an employee of Manpower, Inc. (Manpower), a labor service company, and had been assigned to temporary duty at Sioux Steel. Goodman received workers' compensation benefits through Manpower's Insurer.

Goodman also brought a common law negligence action against Sioux Steel for his injuries. Sioux Steel responded by arguing that Goodman's claim was barred by SDCL 62-3-2, the workers' compensation exclusivity provision. The trial court directed a verdict in favor of Sioux Steel. Goodman appeals to this court and we decide:

> Whether an employee of a labor service company who is assigned to a temporary employer makes a contract of hire with the temporary employer and thus comes under the exclusivity provision of South Dakota's workers' compensation statute.

This is a case of first impression in South Dakota. The question has been addressed

in numerous jurisdictions, with mixed results. The majority position holds a temporary employee, such as Goodman, is an employee of both the labor broker and its customer company, and workers' compensation is the temporary employee's exclusive remedy. *See, e.g., McMaster v. Amoco Foam Products Co.*, 735 F.Supp. 941 (D.S.D.1990) (applying South Dakota law); *Pettaway v. Mobile Paint Mfg. Co., Inc.*, 467 So.2d 228 (Ala.1985); *Santa Cruz Poultry, Inc. v. Superior Court*, 194 Cal. App.3d 575, 239 Cal.Rptr. 578 (1987); *Fox v. Contract Beverage Packers, Inc.*, 398 N.E.2d 709 (Ind.App.1980); *Whitehead v. Safway Steel Products, Inc.*, 304 Md. 67, 497 A.2d 803 (1985); *Danek v. Meldrum Mfg. and Engineering Co., Inc.*, 312 Minn. 404, 252 N.W.2d 255 (1977); *Freeman v. Krause Milling Co.*, 43 Wis.2d 392, 168 N.W.2d 599 (1969). Typically, these courts have held an employer/employee relationship is implied as a matter of law, premised upon the control the customer company exercises over the temporary employee.

However, several jurisdictions hold it is a question for the trier of fact whether a temporary employee is under a contract of hire with a labor broker's customer company. *See, e.g., M.J. Daly Co. v. Varney*, 695 S.W.2d 400 (Ky.1985); *Pato v. Sweeney Steel Service Corp.*, 499 N.Y.S.2d 286, 117 A.D.2d 984 (1986); *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wash.2d 550, 588 P.2d 1174 (1979). Typically, the jury question is whether the temporary employee consented to an employment relationship with the customer company.

In his treatise on workers' compensation, Professor Larson proposes a test which has been acknowledged in both majority and minority position jurisdictions:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
> (a) the employee has made a contract of hire, express or implied, with the special employer;

(b) the work being done is essentially that of the special employer; and
(c) the special employer has the right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

Employment may also be "dual," in the sense that, while the employee is under contract of hire with two different employers, his activities on behalf of each employer are separate and can be identified with one employer or the other. When this separate identification can clearly be made, the particular employer whose work was being done at the time of injury will be held exclusively liable. 1C. Larson, Workmen's Compensation Law § 48.00 (1990).* Professor Larson stresses, "[t]here can be no compensation liability in the absence of a contract of hire between the employee and the borrowing employer." *Id.* § 48.11. "This must necessarily be so, since the employee loses certain rights along with those he gains when he strikes up a new employment relationship. Most important of all, he loses the right to sue the special employer at common law for negligence[.]" *Id.* § 48.12.

SDCL 62–1–3 defines "employee" for purposes of workers' compensation:

> [E]very person, including a minor, in the services of another under any contract of employment, express or implied[.]

The Larson test is thus consistent with SDCL 62–1–3 in identifying a contract of employment, express or implied, as essential to workers' compensation coverage. *See Scissons v. City of Rapid City*, 251 N.W.2d 681 (S.D.1977); *Schumacher v. Schumacher*, 67 S.D. 46, 288 N.W. 796 (1939); *Bergstresser v. City of Willow Lake*, 63 S.D. 386, 259 N.W. 276 (1935).

While the Larson test focuses on liability for workers' compensation, it is nonetheless useful because liability for common law negligence (which is at issue here) is inversely related to liability for workers'

---

* In the words of Professor Larson, Manpower is the "general employer," and Sioux Steel is the "special employer."

compensation under South Dakota's Workers' Compensation statute. SDCL 62–3–2, the workers' compensation exclusivity provision, provides in pertinent part:

> The rights and remedies herein granted to an employee subject to this title, on account of personal injury ... arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, ... on account of such injury ... against his employer ..., except rights and remedies arising from intentional tort.

█ As a general rule, we construe workers' compensation statutes liberally to provide coverage, even when a worker would rather avoid it. *Jensen v. Sport Bowl, Inc.*, 469 N.W.2d 370, 371 (S.D.1991); *South Dakota Med. Service v. Minnesota Mut. Fire & Cas. Co.*, 303 N.W.2d 358, 361 (S.D.1981). And although the existence of an employer/employee relationship is normally a question of fact, where clear, the relationship may be determined by the court. *Steen v. Potts*, 75 S.D. 184, 189, 61 N.W.2d 825, 828 (1953).

█ Under these circumstances and for purposes of workers' compensation, we find an implied employment contract between Goodman and Sioux Steel as a matter of law. The purpose of Goodman's association with Manpower was to secure temporary employment with other businesses, such as Sioux Steel. Goodman performed the work of Sioux Steel under its direction and control. Although Sioux Steel could not discharge Goodman from his employment with Manpower, Sioux Steel could refuse to accept Goodman's assignment to the company or could relieve Goodman of his duties once assigned. From Sioux Steel's perspective then, it maintained the right to hire and fire Goodman. Such an analysis is consonant with the majority of jurisdictions which have addressed this issue.

The implied contract of employment between Goodman and Sioux Steel precludes Goodman from pressing his common law negligence action. SDCL 62–3–2. Under our holding, a directed verdict for Sioux Steel was appropriate. We affirm.

MILLER, C.J., and AMUNDSON, J., concur.

SABERS, J., concurs specially.

HENDERSON, J., dissents.

SABERS, Justice (concurring specially).

I concur in all respects.

I write specially to point out that the dissent appears to overlook the fact that Goodman is *in fact* being provided worker's compensation coverage. What difference does it really make that it is being provided by his first employer, Manpower, rather than his second employer, Sioux Steel? Goodman cannot show that he is entitled to bring a common law negligence action against Sioux Steel. This is a solid decision and a just result. One can't help but consider the whereabouts of the "solitary cry(er) of dissent" when Black Hills wood cutter Flores was determined by this court to have *no* workmen's compensation insurance *whatsoever. See Egemo v. Flores*, 470 N.W.2d 817 (S.D.1991).

HENDERSON, Justice (dissenting).

In every argument, one or more premisses and a conclusion are asserted. It is fundamental, in establishing sound law or a decision, that an argument must be first recognized. My brothers fail to recognize appellant's argument.

Salient facts of this case are not revealed to the reader in the majority decision. Hence, deduction of legal propriety of this decision is not possible. Ultimate facts are set forth only and they are quite conclusory; they are set forth in four sentences, at the conclusion of this opinion, in the penultimate paragraph.

> Whether our argument concerns public affairs or some other subject we must know some, if not all, of the facts about the subject on which we are to speak and argue. Otherwise, we can have no materials out of which to construct arguments.

ARISTOTLE, Rhetoric

So I wish to furnish some (and perhaps not "all") of the construction materials.

1. A jury heard the appellant's case; the trial judge did not permit the jury to decide the case.

2. Upon a motion for directed verdict, the trial judge must determine if there is any substantial evidence to sustain the action. *Sabag v. Continental*, 374 N.W.2d 349, 355 (S.D.1985). In assessing this substantial evidence test, the trial judge must accept the evidence in the most favorable light for the non-movant (Goodman). All legitimate inferences of fact must be indulged in Goodman's favor. *Id.*

3. Goodman's right hand was crushed between the unguarded (apparently) machine owned by Sioux Steel.

4. In a prior ruling, before the directed verdict, the trial judge had ruled: "there exists a genuine issue of material fact as to whether or not there existed an implied contract of employment between the plaintiff and defendant, which issue is properly triable by a jury." Thus, trial judge reversed himself in these proceedings.

5. During the trial, Goodman testified that Ms. Heesch told him, when he signed a contract of employment with Manpower, that he would not be working for Sioux Steel. In fact, he testified that she told him this over a half a dozen times.

6. Ms. Heesch told Goodman that he should not actively seek employment from Sioux Steel, per the testimony of Goodman.

7. Ms. Heesch testified that after the reviewing and application process, that employees would be employed by Manpower and would receive their pay and fringe benefits from Manpower. Not only Goodman, but other employees, in the interviewing process, were told that Manpower, not Sioux Steel, would be accountable for worker's compensation and unemployment compensation.

8. Testimony went into the record, before the jury, that if employees had to call in sick or would be arriving late, they must call Manpower, not Sioux Steel.

9. Employees were given instructions by Manpower supervisors as to the type of clothing to be used when they worked.

10. The written agreement (contract) between Goodman and Manpower specified that Sioux Steel recognized Manpower's employer-employee relationship; and that such matters as employment, job assignment, pay procedures were all matters that Manpower governed. This negates any implied consent on the part of Goodman to be an employee of Sioux Steel. There being an expressed contract of employment between Goodman and Sioux Steel and with the twenty-two recitations of fact set forth in this dissent, all militating against Goodman being an employee of Sioux Steel, there cannot exist a duality of employment of Goodman, as an employee, for both Sioux Steel and Manpower. *See*, 1–C Larson, Workman's Compensation Law, at section 47.10.

11. Sioux Steel employees had a separate time clock which they punched; Manpower employees did not use this time clock.

12. Nelson, a Sioux Steel foreman for 20 years, told Goodman, per the testimony, that Goodman would become a Sioux Steel employee if he worked hard. He was never so notified.

13. Testimony disclosed that in the event that a Manpower employee decided that he or she no longer wished to work on the Sioux Steel job, that the employee was to inform Manpower, not Sioux Steel.

14. Goodman had a written contract with Manpower; he had no written contract with Sioux Steel. During trial, Sioux Steel stipulated that Goodman was a Manpower employee.

15. Sioux Steel never prepared a W2 or W4 for any Manpower employee or its premises.

16. Sioux Steel never paid worker's compensation insurance nor unemployment compensation on Manpower employees.

17. Sioux Steel did not send a report of first injury; rather, it sent the form to Manpower to fill out. Under South Dakota law, employers must file a first report of injury with the State of South Dakota. Here, if Manpower employees were injured at the Sioux Steel worksite, Sioux Steel

notified Manpower of the injuries by a "report form" designating these injured workers as being Manpower employees. Sioux Steel is on the printed page, bound by its own admission, that Goodman was not its employee. It beggars the legal imagination as to how, either the trial court, or the Supreme Court of this State can, by an implied contract of law, affix unto Goodman the label of "employee," either as a singular employee of Sioux Steel or a dual employee of Sioux Steel.

18. The report form designated Goodman as a Manpower employee, not a Sioux Steel employee.

19. Goodman received his compensation benefits from Manpower's insurer, not Sioux Steel's carrier.

20. OSHA demanded that Sioux Steel furnish a report and requested an explanation as to why Sioux Steel failed to file a report; Sioux Steel's plant manager, Siglin, told OSHA officials that these employees (including Goodman) were not considered "company employees."

21. On the record, trial judge expressed: "Manpower had the right to hire or fire the plaintiff (Goodman)."

22. Goodman's paycheck was issued by Manpower.

In short, Sioux Steel never, at any time, claimed Goodman as one of its employees, until after Goodman's injury; and the decision of this Court is to affix an employer-employee relationship by implication. I must dissent, under these facts. Goodman was the sole employee *of* Manpower but he worked *at* Sioux Steel under the guidance, supervision, and control of Manpower. If, indeed, Sioux Steel had some control over Goodman, that did not create a new, independent contract of employment. Certainly, in the field of commerce, it is nothing out of the ordinary to work *for* some employer *at* another place of business.

The majority apparently takes the position that Goodman is a "loaned servant." The facts in this case simply do not fit into that theory.

This is a provocative case. Often, if I may philosophize momentarily, an interest in general ideas exemplifies an absence of particular knowledge. Sioux Steel has raised the affirmative defense of the "loaned servant doctrine." [1] As such, the burden falls squarely upon the defendant asserting such a defense. Sioux Steel has not met that burden; it has not even come close to it; quite to the contrary, the facts of this case militate strongly in favor of this injured worker that this "doctrine" should not apply. *Newland v. Overland Exp., Inc.*, 295 N.W.2d 615 (Minn.1980). *See, Rademaker v. Archer Daniels Midland Co.*, 310 Minn. 240, 247 N.W.2d 28 (1976). In said case, it is held, moreover that: "Every employment relationship is based upon a contract, express or implied, and the employee's consent is essential to the validity of that contract." Here, it is obvious that Goodman never consented. How could he possibly "consent" when he was told, over and over again, that Manpower was his employer, and that Sioux Steel was not his employer? Sioux Steel refused to recognize that he was one of their employees. After crushing his hand, apparently, by failing to provide a safety guard or shield on some equipment, to hide behind worker's compensation law, it says: "Hey, you didn't know it, but now you're our employee." Shame on Sioux Steel. Shame on such a phony pretense to deprive this seriously injured, disabled, and deformed man the opportunity to have his case decided by a jury under the American System of Law.

I would follow the lead of the Nebraska Supreme Court. Nebraska Justices recognized that the relationship of employer and employee is one which is dependent upon *consent* by both parties and that the rela-

1. This case was fully heard by a jury; *Egemo* was not; it was an administrative appeal. Here, we are concerned with the "loaned servant" doctrine and whether it applies under the facts; in *Egemo,* our analysis centered upon "independent contractor" or "employee" under the facts.

Obviously, different facts and issues. In *Egemo,* we held the facts supported an independent contractor/contractee relationship. Acting Justice Hertz wrote in *Egemo,* inter alia: "We have often stated that each case must be decided on its own facts ..."

tionship is not one which could be unilaterally thrust upon the employee contrary to his wishes. In *Nussbaum v. Wright*, 217 Neb. 712, 350 N.W.2d 559 (1984), the Nebraska Supreme Court denied workers' compensation benefits to Nussbaum (an alleged "loaned" employee) who sought to recover benefits for injuries while lent to the defendant (the alleged "special" employer). The *Nussbaum* Court denied these benefits, holding that the plaintiff was not an employee of the defendant.

> When an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do he is performing his duty to the employer who gave the order. * * * *Consent cannot be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another.* * * * Before such new relationship can be made effective, the servant must understand that he is submitting himself to the control of the new master.
>
> (emphasis added).

*Nussbaum*, 350 N.W.2d at 562.

A mutual assent and a meeting of the minds must exist for there to be a binding contract between master and servant. I support this statement by a decision of the Justices of the Supreme Court of the State of Washington and the case of *Novenson v. Spokane Culvert and Fabrication Co.*, 91 Wash.2d 550, 588 P.2d 1174 (1979) (en banc) holding there with supporting cases, the highest court of that state expressed: "for purposes of workmen's compensation, an employment relationship exists only when (1) the employer has the right to control the servant's physical conduct in the performance of his duties, and (2) there is consent by the employee to this relationship." *Accord:* Opinion of the Justices of the Supreme Court of Kentucky on May 2, 1985 in *M.J. Daly Co. v. Varney*, 695 S.W.2d 400. There, the Justices in the penultimate paragraph on page 403, opined: "The bottom line is that the parties are free to contract as they wish. *We are obliged to accept its status which they have expressed for themselves.*" (Emphasis supplied mine). Professor Larson, in his well recognized treatise on Workers' Compensation law, emphasizes that a "contract for hire" is critical to the existence of the employer-employee relationship. As stated at 1–C Larson, *Workmen's Compensation Law*, § 48, p. 8–405:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workman's compensation [and thus, presumably, immune from suit] only if (a) *the employee has made a contract of hire, express or implied, with the special employer....* (emphasis added).

*Id.* As further stated by Larson:

> ... the spotlight must now be turned upon the employee, for the first question of all is: did he make a contract of hire with the special employer? If this question cannot be answered 'yes', the investigation is closed, and there is no need to go into tests of relative control and the like.

1–C Larson, *Workmen's Compensation Law*, § 48.11, p. 8–409. As further stated by Larson:

> This must necessarily be so, since the employee loses certain rights along with those he gains when he strikes up a new employment relationship. Most important of all, he loses the right to sue the special employer at common law for negligence[2]; and when the question has

---

**2.** Goodman sued for proximate injuries sustained by the negligence of Sioux Steel. Sioux Steel defended upon (a) Goodman was negligent himself and (b) Goodman's claims were barred by SDCL 63–3–2. This statute is the exclusivity provision of the South Dakota Worker's Compensation Law. If Sioux Steel is an employer of Goodman within the meaning of SDCL 62–1–2, Goodman is barred from recovering in tort against Sioux Steel. Was Goodman an employee of Sioux Steel? Trial court bifurcated that issue alone for a jury to decide. Thus, there is a great difference as to whether Goodman draws worker's compensation from Sioux Steel or Manpower. The trial court's ruling barred Goodman from suing in tort. Thus, he could

been presented in this form, the courts have usually been vigilant in insisting upon a showing of a *deliberate and informed consent* by the employee before employment relationship will be a bar to common law suit.

(emphasis added).

*Id.* § 48.12 at p. 8–409. I submit that this worker never made a "deliberate and informed consent."

I would not countenance a jury of Goodman's peers to eagerly listen to—and weigh—this evidence for days; and, then, peremptorily tell them: "Ladies and gentlemen of the Jury, you will not be permitted to decide this case." Was there, at least, my dear reader, a question of fact for the jury to decide? Of course, there was. See, point of law expressed in *Whitehead v. Safway Steel Products*, 304 Md. 67, 497 A.2d 803 (1985), 497 A.2d at 804 expressing: [the] question whether employer-employee relationship exists is a question of fact for jury if there are conflicting inferences, evidence, on [the] issue of control in performance of a given function; overruling *L. & S. Construction Company v. State Accident Fund*, 221 Md. 51, 155 A.2d 653 (1959). Accord: *O'Brien v. Garden Way Mfg., Inc.*, 72 A.D.2d 860, 421 N.Y.S.2d 729 (1979). I close my solitary cry of dissent with the words of the giant from Illinois:

> Woe unto the world because of offenses, for it must needs be that offenses come; but woe to that man by whom the offense cometh.
>
> Abraham Lincoln, his
> Second Inaugural address
> at Washington, D.C.,
> March 4, 1865.

not recover damages from a company which