SMITH CONCRETE, INC., Appellant,

v.

MOUNTAIN ENTERPRISES, INC., William Spears, Walter Turner, Administrative Law Judge, Special Fund, Larry D. Beale, Director of Special Fund, and Workers' Compensation Board, Appellees.

No. 91–SC–694–WC.

Supreme Court of Kentucky.

May 14, 1992.

Rehearing Denied Aug. 27, 1992.

Ernest H. Jones, II, John G. Rice, Geralds, Moloney & Jones, Lexington, for appellant.

John V. Porter, Wells, Porter, Schmitt & Walker, Paintsville, for appellee, Mountain Enterprises, Inc.

Stephen N. Calvert, Stidham, Simmons & Calvert, Jackson, for appellee Spears.

Mark C. Webster, Labor Cabinet, Special Fund, Louisville, for appellee Beale and Special Fund.

## OPINION OF THE COURT

In this workers' compensation case, the central issue involves the identity of the employer with whom liability rests for the occupational injury suffered by claimant. The Workers' Compensation Board (Board) reversed the finding of the Administrative Law Judge (ALJ) on this issue and recognized that several procedural errors amounted to a denial of due process. The Court of Appeals reversed the Board and reinstated the opinion of the ALJ, stating ". . . the Administrative Law Judge as factfinder was well within his prerogative. . . ." and ". . . the board had no authority to review the evidence and draw other conclusions."

We agree with the Board that the findings of the ALJ are clearly erroneous in view of the evidence presented and the procedural shortcomings involved below. Therefore, we adopt, with minor deletions,

the opinion of the Board by William A. Miller.

"BEFORE: ANGELUCCI, Chairman, GREATHOUSE, and MILLER,

Board Members.

"MILLER, MEMBER. William Spears (Spears) received an award rendered by Walter W. Turner, Administrative Law Judge (ALJ), for total permanent disability apportioned 50% to the Special Fund and 50% to the employer pursuant to KRS 342.-1202 for an injury occurring September 7, 1988. While the application for adjustment of claim was initially filed by Spears against Mountain Enterprises and the Special Fund, the final award by the ALJ was rendered in favor of Spears against Smith Concrete, Inc. Smith Concrete has appealed contending that at the time of Spears' injury on September 7, 1988, it was not the employer and further contending that it was denied procedural due process by certain orders of the ALJ restricting what evidence it could produce in defense of Spears' claim.

"As stated above, Spears initially filed his claim against Mountain Enterprises, a contractor engaged in highway projects for the Commonwealth of Kentucky. Following the filing of the claim, the usual scheduling order was sent out to the respective parties by the Department of Workers' Claims. Pursuant thereto, the medical report of Dr. Rapier was ordered filed, Spears' deposition was taken, Mountain Enterprises had Spears examined by Dr. Scott and his deposition was taken. On Friday, May 12, 1989, a pre-hearing conference was held in accordance with the regulations of this Department and a pre-hearing order was entered. That written document indicates that contested issues at a hearing were to consist of extent and duration of disability, employment status, wages, seasonal employment, responsibility for medical expenses, and cost upon failure to pay medical bills. However, as appears subsequently in pleadings filed by counsel for Mountain Enterprises, other matters occurred not contained in the written pre-hearing order....

"On May 12, 1988, pursuant to order of the ALJ, Mountain Enterprises filed a motion to join Smith Concrete, Inc. as a party defendant. On May 31, 1989, the ALJ entered an order joining Smith Concrete, Inc. as a party defendant and granted Smith Concrete through July 6, 1989, to complete proof and further, set hearing on Spears' claim against all parties on July 6, 1989. This despite the fact that under our regulations a party defendant is entitled to 60 days for discovery proof, additional 30 days following plaintiffs proof for taking of defendant's proof, and a pre-hearing conference. Further, the order of May 31, 1989, makes no provision for the supplying of proof already in the record by the original parties to be supplied to Smith Concrete, Inc., as would be the situation had the Special Fund been joined for the first time. Smith Concrete, Inc.'s carrier, Nationwide Insurance Company (Nationwide), received a notification of their joinder on June 6, 1989. As appears by affidavit in support of a motion by Smith Concrete and Nationwide to permit taking of proof after the hearing of July 6, 1989, Nationwide was unable to contact Smith Concrete, Inc. immediately nor to immediately secure copies of proof taken prior to the hearing of July 6, 1989. As a result, neither Smith Concrete nor Nationwide's representative appeared at the hearing of July 6, 1989. At that hearing, there was introduced as evidence the initial deposition of Spears, the deposition of Dr. Scott, the medical report of Dr. Rapier, oral testimony of Spears, oral testimony of William R. Brister, vice-president of Mountain Enterprises, and oral testimony of Phil Annis, Superintendent for Mountain Enterprises on the Louisa Bypass job where Spears was working when injured.

"Subsequent to the July 6th hearing and before the ALJ took the case under submission for decision, Smith Concrete and Nationwide filed a motion to be permitted to take proof contesting Spears' claim and their liability. By order of August 29, 1989, the ALJ acknowledged that Smith Concrete was 'short-sheeted' with respect to proof time before the hearing of July 6, 1989; chastised Nationwide for not making

a motion to extend proof time or continue the hearing prior to July 6, 1989; found that Smith Concrete had notice of Spears' claim and the fact that the claim involved potential liability with respect to Smith Concrete at the time the first report of injury was filed; found that a delay would prejudice the rights of Spears to a speedy resolution of his claim; further found that Smith Concrete's interests with respect to the duration and extent of Spears' disability and the liability of the employer for medical expenses of a chiropractor, Dr. Smith, had been protected by the advocacy of Mountain Enterprises, thus not entitling Smith Concrete to introduce any evidence with respect thereto; and granted Smith Concrete and Mountain Enterprises 60 days from August 29, 1989, to take proof only with respect to Spears' employment status with the respective defendant-employers.

"On October 9, 1989, Smith Concrete took the deposition of Harold Smith and Maye Smith. Harold Smith, then retired, had been the owner of Smith Concrete and Maye Smith, his wife, was the financial secretary who kept all records including payroll records.

"Subsequent to these depositions, on November 29, 1989, the ALJ entered an Opinion, Award and Order finding Spears to be 100% occupationally disabled and further finding that Smith Concrete, Inc. was Spears' employer on September 7, 1988, at the time of Spears' injury. The ALJ characterized as a sham what was described both by Mountain Enterprises and Smith as work being performed under an equipment rental agreement with persons who were on occasion employees of Smith Concrete being placed upon and employed by Mountain Enterprises. The ALJ found as a fact that this was a simple avoidance of a subcontractor relationship, because Smith Concrete could not qualify with the Commonwealth of Kentucky as a subcontractor on state projects, and, 'penetrating the veil', found the relationship between Mountain Enterprises and Smith Concrete to be a simple subcontract with the crew of workmen denominated as Smith's employees.

"We would first note that the uncontradicted facts do not reveal anything either immoral or illegal with respect to the business arrangement between Mountain Enterprises and Smith Concrete. Essentially, Smith Concrete was apparently unable to qualify as a subcontractor with financial security and bonds as required by the State of Kentucky for working on the Commonwealth's projects. Accordingly, the general contractor, either East Kentucky Paving Corporation or Mountain Enterprises, agreed with Smith Concrete, Inc. to pay Smith Concrete according to unit prices of work completed, renting to Mountain Enterprises the equipment, and deducting from the unit prices equipment rental, payroll, and any other charges. The payroll of Mountain Enterprises included Harold Smith as superintendent, Malcomb Smith as foreman, Spears and other crew members. At other times of the year, Spears and various other persons who had worked for Smith Concrete, were employed by Smith Concrete and paid directly by Smith Concrete. This record contains W–2 forms which indicate that in the years 1986, 1987, and 1988, Spears was paid substantial sums by East Kentucky Paving Company, Smith Concrete, Mountain Enterprises, and smaller sums by several other corporations. The evidence further establishes that Smith Concrete, in addition to workmen such as Spears, had other employees for whom they were required to carry workers' compensation insurance.

"The following facts stand uncontroverted. Mountain Enterprises in 1988 received a highway contract from the Commonwealth of Kentucky to do work on the Mountain Parkway above Salyersville. They also in 1988 received a contract for work on a bypass at Louisa, Kentucky. Spears, with other members of the crew including Malcomb Smith and Harold Smith, beginning in April 1988, worked on the Mountain Parkway project near Salyersville with the arrangement between Mountain Enterprises and Smith Concrete, Inc., consisting of the equipment rental agreement as set out above. Spears testified that he was working for Mountain Enterprises for approximately four months

before the Louisa job came up. Annis testified that on the Louisa Bypass job, Mountain Enterprises had a crew on the job but needed additional help quickly in order to pour some concrete medians. Harold Smith was apparently contacted. Smith testified that the work on the Louisa Bypass was performed under the same conditions as the Mountain Parkway work at Salyersville, i.e., through equipment rental agreement. Spears testified that before going to work at Louisa, they were required to fill out employment forms by Mountain Enterprises. Without question, Mountain Enterprises paid Harold Smith, Malcomb Smith, Spears and the other members of the crew. Phil Annis was on the job at all times for Mountain Enterprises and oversaw the entire project. Malcomb Smith was Spears' foreman but Malcomb Smith likewise was employed by Mountain Enterprises, having signed the same employment forms as Spears and having received his paycheck from Mountain Enterprises. When Spears was injured, Malcomb Smith completed an accident report with Mountain Enterprises as the employer. Whether this was ever filed with the Board is somewhat questionable but there does appear in the record an incomplete SF–1, unsigned, with Mountain Enterprises as the employer. Apparently, this was completed by the Department when the application for adjustment of claim was filed by Spears.

"The ALJ apparently placed great stress on a finding of fact that Smith Concrete agreed to provide workers' compensation insurance coverage on the employees on the job. We do not believe this finding of fact is supported by any evidence. When Mountain Enterprises attempted to introduce an equipment rental agreement into evidence which apparently contained such a provision, it developed that this related to the Salyersville job. Objection was made and the ALJ at that time ruled further evidence inadmissible and further ordered that the agreement with respect to the Louisa Bypass job be filed within 30 days. This was never done.

"Annis testified the Louisa Bypass work was in the nature of an emergency, requiring quick action, and necessitated extra workmen beyond Mountain Enterprises' ordinary crew. Although Mountain Enterprises agreed to produce and file the equipment rental agreement, their failure to do so leads to the belief that such document does not in fact exist. Since such a document is the best evidence, and since objection had been sustained to the terms of such agreement until the agreement itself was filed, parol evidence that Smith Concrete agreed to furnish workers' compensation coverage for Spears and others of the crew is inadmissible. There was no showing nor attempt thereat to prove that the document has become misplaced, destroyed, or unavailable. However, such agreement is really irrelevant.

"The inquiry must be directed to what facts support a finding that Smith Concrete, Inc. was the employer of Spears on the Louisa Bypass project. The contract for the job belonged to Mountain Enterprises and the work being done was that of Mountain Enterprises. Employment forms had been signed by Spears and others including Malcomb Smith with Mountain Enterprises. Spears and others including Malcomb Smith were being paid by Mountain Enterprises. The work being done was not a specialized service to produce a predetermined result, but was of a general character as evidenced by the fact that Mountain Enterprises had one of its regular crews on the work site and simply needed additional help in order to complete the work on an expedited basis. Mountain Enterprises had its general superintendent on the job who had complete control over the entire project.

"All parties, as well as the ALJ, cite and rely upon *M.J. Daly Company v. Varney*, Ky., 695 S.W.2d 400 (1985). In that case, Varney was hired by and on the payroll of a labor service company which had contracted with M.J. Daly Company to supply workers, including Varney. Varney was injured in a fire and explosion on the premises of the Daly Company and had filed a workers' compensation claim against the labor service company. At one point, motion was made to join M.J. Daly Company

as a co-employer which was opposed by Varney. The President of M.J. Daly Company testified that Varney was not a company employee, that he had been offered employment but had refused it, preferring to remain an employee of the labor service company. Varney then brought this tort action against M.J. Daly Company claiming negligence. The Daly Company claimed statutory immunity based on the exclusive remedy provision of the Workers' Compensation Act, either as an 'employer' or as a 'contractor'. It was held that since Daly was not contracting for another as a principal contractor, there was no contractor/subcontractor question involved. The sole question was whether Daly qualified as an employer. The question then became whether Varney was a "loaned servant" from the labor service company to the Daly Company. Justice Leibson set out three tests, (a) the work being done is essentially that of the special employer, (b) the special employer has the right to control the details of the work, and (c) the employee has made a contract of hire, expressed or implied, with the special employer. Justice Leibson then held that Varney had no contract of hire, expressed or implied, with the M.J. Daly Company and was therefore not an employee.

. . . .

■ "To equate the position of Smith Concrete, Inc. here as equivalent to that of the labor service company in *Varney* is sheer sophistry. The contract on which the work was being done was held by Mountain Enterprises; the actual work being done was that which Mountain Enterprises had contracted to do; the general superintendent of Mountain Enterprises was on the job and had control over the entire project; Spears had signed employment documents for Mountain Enterprises; and Spears was being paid by Mountain Enterprises. Before there can be an employer-employee relationship there must be a contract of hire, expressed or implied. See KRS 342.640(1). The fact that Spears signed employment documents for Mountain Enterprises employment and received his paycheck from Mountain Enterprises employment negates any contract of hire on the Louisa Bypass job between Spears and Smith Concrete, Inc. While Spears may have received his direct orders with respect to details of the work from Malcomb Smith, it is to be borne in mind that Malcomb Smith was likewise on the payroll of Mountain Enterprises and had signed employment documents with Mountain Enterprises. Even so, Mountain Enterprises retained the right of control by having on the job Phil Annis, its general superintendent, who had complete overall authority over the job, and by virtue of the fact that its right to cease paying Spears gave effective control over Spears. It has been held that in the creation of an employer-employee relationship, the law does not require actual and intimate control of the details of the work being performed. See *Sam Horne Motor and Implement Company v. Gregg*, Ky., 279 S.W.2d 755 (1955); *Partin–Lambdin Lumber Company v. Frazier*, Ky., 308 S.W.2d 792 (1958). The facts here are more closely akin to *Rice v. Conley*, Ky., 414 S.W.2d 138 (1967) and *Bowen v. Gradison Const. Co.*, 236 Ky. 270, 32 S.W.2d 1014 (1930).

■ "In short, Mountain Enterprises was the entity whose work was being performed by Spears, was the entity paying Spears, was the entity which had the right to control Spears, and was the entity by whom Spears thought he was employed. The only possible theory of Smith Concrete, Inc. being Spears' employer was inadmissible oral evidence that Smith Concrete, Inc. agreed with Mountain Enterprises to provide workers' compensation insurance. Nothing in the evidence indicates that in working on the Louisa Bypass, Spears had any contract of hire, expressed or implied, with Smith Concrete, Inc. and it is well-settled that an employer cannot be thrust upon an employee against his will and without his knowledge. *Rice v. Conley, supra.*

■ "Since we have determined that the Opinion, Award and Order was erroneous insofar as holding Smith Concrete, Inc. to be the employer of Spears, the remainder of Smith Concrete, Inc.'s contentions on appeal need not be addressed. However, in

passing, it was erroneous for the ALJ to restrict Smith Concrete's proof to the issue of employment status since it was not required to rely upon the expertise of a co-defendant to create a justiciable issue with respect to extent and duration of injury and reasonableness of medical expense. A party against whom liability is claimed has a right to defend all issues affecting that liability including the monetary extent thereof. *American Cas. Co. of Reading, Pa. v. Shely*, 314 Ky. 80, 234 S.W.2d 303 (1950).

"We note that Spears has failed to take a protective appeal in this case. However, a close reading of the orders of the ALJ reveals that at no time was any order ever entered with respect to Mountain Enterprises, the ALJ's orders simply being an award against Smith Concrete, Inc. Therefore, the issue of Mountain Enterprises' liability to Spears is still open and has not been adjudicated. Since we have determined that it was erroneous for the ALJ to award compensation against Smith Concrete, Inc., it is therefore ordered and adjudged that the above-styled action be REMANDED to the Administrative Law Judge for entry of an award for William V. Spears for total permanent occupational disability apportioned 50% to Mountain Enterprises and 50% to the Special Fund.

"ALL CONCUR."

STEPHENS, C.J., and COMBS, LAMBERT, LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.