# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 2, 2015
NOT TO BE PUBLISHED

𝔖upreme 𝔒ourt of 𝔎entucky

FINAL

2014-SC-000273-WC

DATE 8-20-15 EwtGrown, D.C.

TERRY ASHLEY                                                          APPELLANT

V.
ON APPEAL FROM COURT OF APPEALS
CASE NO. 2013-CA-001768-WC
WORKERS' COMPENSATION NO. 06-00294

MICHAEL MERCER; OVA CARMEN;
UNINSURED EMPLOYERS' FUND;
HONORABLE MARCEL SMITH,
ADMINISTRATIVE LAW JUDGE;
HONORABLE OTTO D. WOLFF, IV,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                          APPELLEES

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Terry Ashley, has filed this appeal to contest several parts of a workers' compensation award entered in favor of Appellee, Michael Mercer. Ashley argues: 1) that the Administrative Law Judge ("ALJ") erred by finding that Mercer was his employee; 2) that Mercer was instead an independent contractor or an employee of Appellee, Ova Carmen, who was the owner of the house under construction where Mercer was injured; 3) that the Workers' Compensation Board ("Board") misinterpreted the effect of a settlement between Mercer and the Uninsured Employers' Fund ("UEF"); and 4) that the

ALJ erred by refusing to order vocational rehabilitation benefits for Mercer. For the below stated reasons, we affirm the Court of Appeals.

After being laid off from a factory, Ashley entered the home construction business. In Spring 2005, Ashley was hired by Carmen to oversee the construction of a house. Mercer was hired to help build the house. Prior to Carmen's house project, Mercer assisted Ashley with the construction of seven or eight houses. Mercer testified that he first performed construction work for Ashley in September 2004, and worked with him until the work-related injury occurred. Mercer only has a ninth grade education and has no specialized vocational training, except for the carpentry skills he learned while building various structures.

At the Carmen jobsite, Ashley instructed Mercer what tasks to perform and arranged Mercer's hourly wage. Carmen testified that he never met Mercer before construction began, and that he did not hire Mercer as an employee or independent contractor. Carmen stated that he did not supervise Mercer, did not provide any tools to Mercer, and did not believe he had the authority to direct, hire, or fire Mercer. However, Carmen directly paid Mercer for his work, purportedly at Ashley's request.[1]

Construction of Carmen's house progressed smoothly until Mercer suffered a severe fall at the work site on November 7, 2005. The fall caused

---

[1] While he was working in home construction, Ashley received unemployment benefits. Ashley admitted through his testimony that any money which he was owed by Carmen was given to his wife to conceal the fact he was working from the unemployment compensation system.

injuries to Mercer's left leg and arm, lower back, chest, abdomen, and right foot and ankle. The injuries required surgical repair. Ashley allegedly promised to pay Mercer's medical bills, but did not maintain workers' compensation insurance. Carmen also did not have workers' compensation insurance. Mercer filed a Form 101 alleging work-related injuries.

Mercer's claim was assigned to ALJ Marcel Smith. The claim was bifurcated to first determine whether an employer-employee relationship existed between Ashley, Carmen, and Mercer. In an opinion, award, and order entered on October 17, 2007, she found that Mercer was Ashley's employee at the time of the accident, that Mercer was not an employee or independent contractor of Carmen, and that Mercer was entitled to temporary total disability benefits. Specifically, ALJ Smith stated:

> [t]he first issue for consideration is whether or not there was employee-employer relationship between [Mercer] and either Terry Ashley or Ova Carmen. The test set out in *Ratliff v. Redmon*, 396 S.W.2d 320, 325-326 (Ky. 1965) and specifically the four tests from *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 118-119 (Ky. 1991) will be applied. First looking at the four tests that appear in both cases, and applying the facts herein:
> 1. The nature of the work as related to the business generally carried on by the alleged employer, indicates to me that [Mercer] was an employee of Terry Ashley but not an employee of Ova Carmen. [Mercer] did carpentry and construction work for Terry Ashley in the process of building homes. Mr. Ashley was in the business of building homes. Mr. Carmen was not in the business of building homes.
> 2. The next test is the extent of control exercised by the alleged employer. Terry Ashley made bids on all jobs, made all the contacts and contracts with home owners, made all the decisions regarding what houses to build, did all the pricing, made all the deals and then directed [Mercer] and the other workers with regard to which project to work on, what days to work, and what to do. He directed [Mercer] what work needed to be accomplished with regard to building homes for Mr. Ashley. I'm not persuaded by any

3

evidence that Mr. Carmen exerted any control over [Mercer]. I'm persuaded by his testimony that he did not consider himself authorized to direct [Mercer] or any of the other workers.

3. One next considers the professional skills of the alleged employee. [Mercer] has a ninth grade education with no GED. He has learned carpentry work on the job. He has no professional or formal training; he has no license or certificate to be a carpenter; he is not an engineer; he is not a certified home builder.

4. The intent of the parties is the next consideration. [Mercer] has testified that he considered himself an employee of Terry Ashley. Although Terry Ashley denied that [Mercer] was his employee, he did state that [Mercer] came to work for him in September 2004. I am not persuaded by Terry Ashley's testimony that [Mercer] was not his employee. I am persuaded by Ova Carmen's testimony that [Mercer] was not his employee. *Ratliff v. Redmon* has three other tests.

5. The fact that the alleged employer provides tools and a place to work indicates an employer/employee relationship. The place to work was provided by Mr. Ashley who bid out the jobs and sent [Mercer] to work on those jobs. Although [Mercer] provided his own belt and hammer, Terry Ashley provided all the other tools including saws, drills, ladders, cords, air guns, air compressors, scaffolding, and ladders. Terry Ashley had originally gotten a bid for the materials, then Mr. Carmen received a bid which was lower. Mr. Carmen paid the bill for the materials and the materials were delivered.

6. The next test that appears only in *Ratliff v. Redmon* is the lack of a fixed termination date for employment. There was no fixed termination date according to the testimony.

7. The next test would be payment by the hour. [Mercer] was paid by the hour for this work. Although it was paid directly by Mr. Carmen, the evidence persuades me that this arrangement was at the request of Terry Ashley.

Considering all of these factors and applying the evidence to them, I am persuaded that [Mercer] was an employee of Terry Ashley at the time of [Mercer's] injury. I am persuaded that [Mercer] was not an employee of Ova Carmen at the time of this injury.

Carmen was dismissed as a party and the UEF was directed to pay medical benefits. The claim was placed in abeyance until Mercer reached maximum medical improvement. Ashley filed a petition for reconsideration, which was denied, and he appealed to the Board. The Board dismissed the

4

appeal because ALJ's Smith's opinion, order, and award was not final and appealable.

Mercer entered into a settlement with the UEF. As part of the settlement, Mercer agreed to accept from the UEF $255.04 per week for 425 weeks beginning on July 21, 2009. This amount represented a 17.5% whole body impairment. Ashley was not a party to the settlement other than as a signatory to a statement that he retained the right to appeal. He appealed from the settlement and ALJ Smith's prior orders. However, the Board again dismissed the appeal finding that the prior orders were interlocutory. The Board remanded the matter to ALJ Otto Wolff to determine whether he would adopt ALJ Smith's findings regarding the employer-employee relationship between Ashley and Mercer.

After a hearing, ALJ Wolff rendered an opinion adopting ALJ Smith's evidentiary findings and conclusions of law. He found that Mercer was Ashley's employee, that Carmen was properly dismissed as a party, that Mercer suffered a work-related injury, that Mercer had a 17% impairment rating, and that Mercer was entitled to permanent total disability benefits at the rate of $463.23 per week. Mercer's request for vocational rehabilitation benefits was denied because ALJ Wolff found he was permanently totally occupationally disabled. Petitions for reconsideration were filed by Ashley, Mercer, and the UEF resulting in an order stating that Ashley would take credit for all payments the UEF has made, and continues to make, pursuant to its

5

settlement with Mercer. The Board and Court of Appeals affirmed, and this appeal followed.

The ALJ, as fact finder, has "the sole discretion to determine the quality, character, and substance of evidence and to draw reasonable inferences from the evidence." *Magic Coal Co. v. Fox*, 19 S.W.3d 88, 96 (Ky. 2000). A finding that favors the party who had the burden of proof must be affirmed if supported by substantial evidence. *Special Fund v. Francis*, 708 S.W.2d 641 643 (Ky. 1986). In other words, the finding must be reasonable under the evidence presented. *Id.* When the burden of proof is not satisfied by a party, it must show that the unfavorable finding was clearly erroneous, and that overwhelming favorable evidence compelled a different result, before that finding may be reversed. *Id.*

In reviewing Ashley's arguments, the Court of Appeals only needed to correct the Board "if it overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice. The function of review in our Court is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687-688 (Ky. 1992).

## I. THE FINDING THAT MERCER WAS ASHLEY'S EMPLOYEE IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Ashley's first argument is that Mercer was not his employee because there was no contract for hire. He analogizes this matter to *Smith Concrete,*

6

*Inc. v. Mountain Enterprises, Inc.*, 833 S.W.2d 808, 812 (Ky. 1992), which held that before an employer-employee relationship can be found, there must be a contract of hire, express or implied. Ashley argues that if there was a contract of hire it was between Carmen and Mercer. He notes that Mercer was paid directly by Carmen and alleges that Carmen controlled Mercer's work at the project to argue a contract for hire existed not between himself and Mercer, but between Carmen and Mercer. We disagree.

*Ratliff*, 396 S.W.2d at 324-325, provides nine factors to apply when determining whether a worker is an employee:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer; and

(i) whether or not the parties believe they are creating the relationship of master and servant.

7

Of these factors, *Chambers v. Wooten's IGA Foodliner*, 436 S.W.2d 265 (Ky. 1969) stated that, "[w]hile many tests are appropriately considered, we think the predominant ones encompass the nature of the work as related to the business generally carried on by the alleged employer, the extent of control exercised by the alleged employer, the professional skill of the alleged employee, and the true intentions of the parties."

ALJ Smith found that Ashley hired Mercer to help build Carmen's house. She found that Ashley told Mercer how to perform his job, what jobs he needed to complete, and provided the majority of tools Mercer used. Ashley also negotiated with Carmen for Mercer's hourly wage. These facts indicate that Ashley was Mercer's employer. While it is true that Mercer was paid directly by Carmen, this was done at Ashley's request. Further, there is no evidence that Carmen intended to hire Mercer or directed his work in any manner. While there is not a written "contract of hire" between Ashley and Mercer, such a contract may be "express or implied." *Ratliff*, 396 S.W.2d at 324. There is sufficient evidence to support ALJ Smith's conclusion that an implied contract of hire existed between Mercer and Ashley, and ALJ Wolff did not abuse his discretion in adopting her findings.

Despite Ashley's argument to the contrary, the facts in this matter are distinguishable from those found in *Smith Concrete, Inc.*, 833 S.W.2d at 812. In that case, the claimant was assigned to work for Mountain Enterprises by his usual employer, Smith Concrete, via a leasing scheme. The Court noted in

8

finding that Mountain Enterprises was the claimant's employer: "[t]he contract on which the work was being done was held by Mountain Enterprises; the actual work being done was that which Mountain Enterprises had contracted to do; the general superintendent of Mountain Enterprises was on the job and had control over the entire project; [claimant] had signed employment documents for Mountain Enterprises; and [claimant] was being paid by Mountain Enterprises." *Id.*

While Mercer was paid directly by Carmen like the claimant in *Smith Concrete* was paid by Mountain Enterprises, outside of that one similarity, the facts between the two matters differ. Carmen did not serve as superintendent of the construction job or direct Mercer to perform certain jobs. Those tasks were performed by Ashley and Mercer was helping Ashley at his direction. Carmen did not take a role in the construction of his house like Mountain Enterprises did in the construction of its project. ALJ Wolff's findings are supported by substantial evidence, and the finding that Mercer was Ashley's employee may not be reversed on appeal.

Ashley alternatively argues that Mercer was an independent contractor of Carmen. However, ALJ Wolff found that Carmen did not hire Mercer or have control over him at the job site. The vast amount of evidence supports the conclusion that Carmen hired Ashley to oversee the construction of the house and that Ashley subsequently hired Mercer to assist. Ashley then directed Mercer to complete certain tasks and provided the tools to complete those

tasks. The record does not support Ashley's allegation that Mercer was an independent contractor of Carmen. *See Ratliff*, 396 S.W.2d at 325-326.

## II. THE WORKERS' COMPENSATION BOARD DID NOT MISINTERPRET THE EFFECT OF THE SETTLEMENT BETWEEN MERCER AND THE UEF

Ashley next argues that the Board misinterpreted the effect of a settlement entered into between Mercer and the UEF by not giving him the benefit of the agreement made between the parties. Ashley contends that he was a party to the settlement agreement because the UEF took on the liability to pay Mercer's benefits since he did not maintain workers' compensation insurance. Therefore, Ashley argues if he is Mercer's employer and he is liable to the UEF for the payments made to Mercer, his liability should be limited to the weekly settlement amount. We disagree.

Ashley was not a party to the settlement agreement even though the UEF has taken on the liability to pay Mercer's benefits. In fact, the settlement specifically states that Ashley was not a party to the agreement. Ashley's only participation in the settlement was to indicate he retained the right to appeal. Thus, we conclude that the settlement was not misinterpreted to Ashley's detriment.

## III. THE ALJ WAS WITHIN HIS DISCRETION TO NOT ORDER VOCATIONAL REHABILITATION BENEFITS

Ashley's last argument is that the ALJ erred by refusing to refer Mercer for vocational rehabilitation benefits. ALJ Wolff did not order vocational rehabilitation benefits because he found Mercer to be permanently and totally

occupationally disabled. Ashley contends that this was an abuse of discretion because ALJ Wolff did not inquire whether vocational rehabilitation benefits were voluntarily offered. However, KRS 342.710(3) provides an ALJ discretion to refer a claimant for vocational rehabilitation. ALJ Wolff, finding that Mercer was permanently and totally disabled, did not believe that ordering Mercer to receive rehabilitation assessment was necessary. He was within his discretion to so order.

For the above stated reasons, the decision of the Court of Appeals is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT,
TERRY ASHLEY:

Norman E. Harned
Ashley Dawn Gerughty


COUNSEL FOR APPELLEE,
MICHAEL MERCER:

Elizabeth Anne Schott
Jessica Jarboe Logsdon
Jessica Meyer Marcum


COUNSEL FOR APPELLEE,
OVA CARMEN:

Calvin Ray Fulkerson


COUNSEL FOR APPELLEE,
UNINSURED EMPLOYERS' FUND:

James Robert Carpenter
Jack Conway, Attorney General